JOSEPH D. ELFORD (SBN 189934)
JEREMY D. BLANK (SBN 172571)
Law Offices of Joseph D. Elford
600 Fell Street #101
San Francisco, CA 94102
Telephone: (415) 573-7842
Email: joeelford@yahoo.com

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONA ALLEN; CARL RAY HARRIS; JONATHAN HOLT; SHAUN JONES; SCOTT OUTHOUT; ELVIN SIKES; NINA FAYE SIKES; NICOLE VAN SCHAICK; PRESTON WARREN; CALIFORNIA CHAPTER OF THE NATIONAL ORGANIZATION FOR THE REFORM OF MARIJUANA LAWS, and DOES 1-200, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LAKE, a municipal corporation; FRANCISCO RIVERO, in his individual and official capacities; CHRIS MACEDO, in his individual and official capacities; LOREN FREEMAN, in his individual and official capacities; RICHARD COEL, in his individual and official capacities, and DOES 1-50. <br><br> Defendants. | Civil Action No. 3:14-cv-03934 <br><br> **AMENDED *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ ii

NOTICE OF APPLICATION......................................................................................1

INTRODUCTION .......................................................................................................2

STATEMENT OF FACTS ..........................................................................................3

LEGAL STANDARDS ...............................................................................................5

ARGUMENT ..............................................................................................................6

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS................................6

    A.   Both the United States Constitution and the California Constitution
        Prohibit Unreasonable Searches and Seizures ......................................................6

    B.   Defendants Violated Both the Federal and State Constitutions by Encroaching
        on Plaintiffs' Property and Seizing Their Medicine Without a Warrant ...............8

    C.   The Defendants' Actions Violate Due Process ......................................................13

        1.   Due Process Requires Advance Notice and a Hearing Before
            Property Is Taken by the Government, Especially When That Property
            Is a "Life Essential" ......................................................................................13

        2.   The Practice of Lake County Officials in Seizing the Property
            of Medical Marijuana Patients Without Prior Notice and an Opportunity
            to be Heard Violates Due Process..............................................................14

II.  IMMEDIATE INJUNCTIVE RELIEF IS NECESSARY TO STOP THE
    UNCONSTITUTIONAL SEIZURE OF MEDICINE FROM SERIOUSLY
    ILL PERSONS.................................................................................................19

CONCLUSION............................................................................................................23

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>

*Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011) .................................6

*Berger v. State of New York,* 388 U.S. 41 (1967) ............................................................11

*Blair v. Pitchess,* 5 Cal.3d 258 (1971) ...........................................................7, 10, 21

*Boddie v. Connecticut* (1971) 401 U.S. 371, 91 S.Ct. 780 .....................................14

*Brock v. Superior Court*, 12 Cal.2d 605 (1939)...............................................................6

*Bumper v. North Carolina*, 391 U.S. 543 (1968) ...............................................12

*City of Garden Grove v. Superior Court*, 157 Cal.App.4th 355 (2007) .................3, 11, 14, 16

*City of Indianapolis v. Edmond* (2000) 531 U.S. 32.................................................13

*Commonwealth v. Krisco Corp.,* 421 Mass. 37, 653 N.E.2d 579 (1995) ................................13

*Cooper v. State,* 277 Ga. 282, 587 S.E.2d 605 (2003)..............................................12

*County of Butte v. Superior Court*, 175 Cal.App.4th 729 (2009) .................3, 14, 15

*Doe v. Harris,* 2012 WL 6101870, 3:12-cv-5713-THE (N.D. Cal. Nov. 7, 2012)....................6

*Johnson v. United States*, 333 U.S. 10 (1942) .......................................................2

*Flahive v. City of Dana Point*, 72 Cal.App.4th, 241 (1999).................................8, 16

*Friedman v. City of Los Angeles,* 52 Cal.App.3d 317 (1975)......................................15, 18

*Gleaves v. Waters,* 175 Cal.App.3d 413 (1985) ...........................................................8

*In re Randy G.*, 26 Cal.4th 556 (2001) .............................................................14

*International Union of Bricklayers and Allied Craftsmen v/ Meese*,
    616 F.Supp. 1387 (N.D. Cal. 1985) ........................................................21

*Kash Enterprises, Inc. v. City of Los Angeles*, 19 Cal.3d 294 (1977)......................................19

*Leaves v. Waters,* 175 Cal.App.3d 413 (1985) ...........................................................8

*Leppo v. City of Petaluma*, 20 Cal.App.3d 711 (1971)..........................................8, 15, 16

*Lightford v. State,* 90 Nev. 136, 520 P.2d 955 (1974) ...................................................12

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F.Supp. 1320
    (N.D. Cal. 1995).................................................................................................6

*Mincey v. Arizona*, 437 U.S. 385 (1978)............................................................................11

*Muniz v. United Parcel Serv., Inc.,* 738 F.3d 214 (9th Cir. 2013)...........................................15

*National Organization for the Reform of Marijuana Law v. Mullen*, 608 F.Supp. 945
    (N.D. Cal. 1985).........................................................................................20, 21

*Novar Corp. v. Bureau of Collection & Investigative Serv.,* 160 Cal.App.3d 1 (1984) .............6

*Orhorhaghe v. I.N.S.,* 38 F.3d 488 (9th Cir. 1994) ..............................................................12

*People v. Kelly,* 47 Cal.4th 1008, 1013 (2010) ....................................................................3

*People v. Mower*, 28 Cal.4th 457 (2002) ............................................................................10

*People v. Sanchez,* 174 Cal.App.3d 343 (1985) ....................................................................7

*People v. Trippet,* 56 Cal.App.4th 1532 (1997) ....................................................................3

*Randone v. Appellate Department of Superior Court of Sacramento County*
    (1971) 5 Cal.3d 536 ...............................................................................14, 18, 19

*State v. Allen,* 188 Mont. 135, 612 P.2d 199 (1980)............................................................13

*State v. Davis,* 261 Ga. 225, 404 S.E.2d 100 (1991) ............................................................12

*State v. Fisher*, 283 Kan. 272, 154 P.3d 455 (2007) ............................................................10

*State v. Kemp,* 217 P.3d 629 (Okla. Crim. App. 2009)..........................................................13

*State v. McGann,* 124 N.H. 101, 467 A.2d 571 (1983) .........................................................12

*State v. Lewis*, 675 N.W.2d 516 (Iowa 2004) ......................................................................9

*State v. Rogers*, 161 Vt. 236, 638 A.2d 569 (1993) .............................................................10

*Sniadach v. Family Finance Corp. of Bay View* (1969) 395 U.S. 337, 89 S.Ct. 1820 ............14

*United States v. Baro,* 15 F.3d 563 (6th Cir. 1994) .............................................................13

*United States v. Breza*, 308 F.3d 430 (4th Cir. 2002) ............................................................10

*United States v. Dunn*, 480 U.S. 294 (1987) ...........................................................................7

*United States  v. Horton,* 496 U.S. 128 91990) ......................................................................7

*United States v. Jenkins,* 124 F.3d 768 (6th Cir. 1997) ........................................................10

*United States v. Molt,* 589 F.2d 1247 (3d Cir. 1978) ............................................................12

*United States v. Most,* 876 F.2d 191 (D.C. Cir. 1989) ..........................................................13

*United States v. Place,* 462 U.S. 696 (1983) ..........................................................................7

*United States v. Reid,* 226 F.3d 1020 (9th Cir. 2000) ...........................................................13

*United States v. Reilly*, 76 F.3d 1271 (2d Cir. 1996) ............................................................10

*United States v. Struckman*, 603 F.3d 731 (9th Cir. 2010) .....................................................9

*United States v. Vasquez,* 638 F.2d 507 (2d Cir. 1980) ........................................................13

*United States v. Wells*, 648 F.3d 671 (8th Cir. 2011) .............................................................9

*Washington v. Glucksberg* (1997) 521 U.S. 702 .............................................................15, 19

*Wattenburg v. United States*, 388 F.2d 853 (9th Cir. 1968) ...................................................9

*Whren v. United States*, 517 U.S. 806, 813 (1996) ..............................................................13

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008) ................................................6

*Zepeda v. INS,* 753 F.2d 719 (9th Cir. 1985) ........................................................................11

## STATUTES

Cal. Civil Code § 52.1............................................................................................................6

Cal. Code of Civil Procedure § 526, subd. (a)(6) ...................................................................6

Health & Safety Code § 11362.5, subd. (b)(1) .................................................................3, 11

SB 420 § 1(a)(2)......................................................................................................................3

## CONSTITUIONAL AND OTHER PROVISIONS

Cal. Const., Art. I, Sec. 13 ......................................................................*passim*

Lake County Ordinance No. 2997 ...........................................................*passim*

U.S. Const., Amend 4 .............................................................................*passim*

U.S. Const., Amend 14 ...........................................................................*passim*

**NOTICE OF APPLICATION**

Plaintiffs hereby request, pursuant to FRCP 65 and Civil Local Rules 7-10 and 65-1, that the Court issue a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue. Counsel for plaintiffs provided notice to County Counsel for Lake County more than one week ago that such application would be filed and he provided a courtesy copy of the principal briefs involved in the instant filing (the original Complaint and *Ex Parte* Application) by electronic transmission to retained counsel, John Whitefleet, on August 29, 2014. *See* Declaration of Joseph D. Elford ("Elford Decl.") ¶6. Although plaintiffs' counsel offered to wait until the following week to file the instant application, if defendants would agree to refrain from raiding qualified medical marijuana patients over the holiday weekend without a warrant or advance notice, defendants have not responded to this offer and, instead, have conveyed their intent to contest the application for a TRO. *See id.* Plaintiffs request that this matter be heard as soon as possible.

This application is based on the Instant Notice of Application; the Amended Complaint filed herewith; the Declaration of Mona Allen in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Allen Decl."); the Declaration of Carl Ray Harris in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Harris Decl."); the Declaration of Jonathan Holt in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Holt Decl."); the Declaration of Leonard Jankowski in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Jankowski Decl."); the Declaration of Shaun Jones in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Jones Decl."); the Declaration of Scott Outhout in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Outhout

Decl."); the Declaration of Elvin Sikes in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Elvin Sikes Decl."); the Declaration of Nina Faye Sikes in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Nina Sikes Decl."); the Declaration of Preston Warren in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Warren Decl."); the Declaration of Nicole Van Schaick in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Van Schaick Decl."); the Declaration of Carey Calvanese in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Calvanese Decl."); the Declaration of Dale Gieringer in Support of *Ex Parte* Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Gieringer Decl."); the Elford Declaration; the record and files in this action, and such other argument or testimony deemed necessary by this Court.

## INTRODUCTION

The protections afforded by the state and federal constitutions apply to everyone, including medical marijuana patients. This case is not strictly about medical marijuana, although it may superficially appear to be so; rather, this case concerns the privacy and property interests protected by the federal and state constitutions, which apply to all citizens. Many years ago, Justice Jackson of the United States Supreme Court observed that the warrant requirement ranks among the "fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." *Johnson v. United States*, 333 U.S. 10, 16 (1948). Similarly, the due process clauses of both constitutions require notice and a meaningful opportunity to be heard *before* one is deprived of his property.

In blatant disregard of both these constitutional principles, defendants repeatedly sent approximately a half-dozen armed police agents -- dressed in camouflage military attire, in unmarked

trucks, with guns conspicuously visible on their sides -- to raid the homes of qualified medical marijuana patients and chop down their plants, without providing them a warrant or any advance notice, as required by the state and federal constitutions.

Sometimes, the patients and their children were at home when the police arrived. *See, e.g.,* Van Schaick Decl. ¶6. Sometimes, the raids occurred at night. *See, e.g.,* Holt Decl. ¶4. Other times, the patients returned home to find their property ransacked, with a "Summary Abatement Notice" left at their door. *See* Holt Decl., Exhibit 1; Allen Decl. 6; Harris Decl. ¶6; Outhout Decl. ¶6; Warren Decl. ¶6. This pattern and practice of the defendants of violating the property rights of medical marijuana patients in Lake County runs afoul of the warrant and due process requirements of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the California Constitution. *Cf. County of Butte v. Superior Court*, 175 Cal.App.4th 729, 735-36 & 739 (2009) (holding that medical marijuana patients may state such claims for the warrantless seizure of their medicine, which, if lawfully possessed under California law, also violates due process); *accord City of Garden Grove v. Superior Court*, 157 Cal.App.4th 355 (2007). An immediate injunction is needed to restore the due process and property rights of all citizens of Lake County.

## STATEMENT OF FACTS

On November 4, 1996, the California electorate passed Proposition 215, known as "the Compassionate Use Act," to "ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes" without criminal penalty. (See Cal. Health & Safety Code § 11362.5, subd. (b)(1).) Seven years later, due to "reports from across the state [that] have revealed problems and uncertainties in the [Compassionate Use Act] that have impeded the ability of law enforcement officers to enforce its provisions as the voters intended and, therefore, prevented qualified patients and designated primary caregivers from obtaining the protections afforded by the act," the Legislature, on September 10, 2003, enacted Senate Bill 420, Stats. 2003 c.875 ("SB 420"),

to clarify its protections. (See SB 420 § 1(a)(2).) This Act expressly allows qualified patients and their primary caregivers to cultivate and possess sufficient quantities of marijuana as are reasonably related to their personal medical needs. *People v. Kelly* (2010) 47 Cal.4th 1008, 1013; *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1549.

Notwithstanding these state laws, the County of Lake deemed the cultivation of medical marijuana above arbitrary figures a nuisance through its enactment of urgency ordinance No. 2977 in July of 2012, and later, through its enactment of Ordinance No. 2997 in June of 2014 ("Measure N") (attached to Amended Verified Complaint, filed herewith, as Exhibit 1). Measure N (Ordinance No. 2997) (attached to Complaint as Exhibit 1) provides, in pertinent part, as follows: all cultivation of marijuana in Community Growth Boundaries and parcels less than one (1) acre are prohibited, Ordinance No. 2997, Sec. 72.5(b); "[o]utdoor cultivation shall be completely screened from public view and the views of adjacent parcels with a fully enclosed solid fence of a minimum of six (6) but not more than eight (8) feet in height, with locked gates. . . . The Fence must be adequately secure to prevent unauthorized entry and include a locking gate that shall remain locked at all times when a Qualified Patient or Primary Caregiver is not present within the cultivation area, Ordinance No. 2997, Sec. 72.5(g); and "any violation of this ordinance shall constitute a public nuisance and shall be subject to abatement as provided by all applicable provisions of law, Ordinance No. 2997, Sec. 72.7(a). With respect to "Summary Abatement" procedures, Measure N provides generally for a five-day notice of a summary abatement, unless the marijuana cultivation poses an immediate threat to public safety. *See id.* at Secs. 72.8 & 72.9. In cases where notice is given, Measure N provides for advance hearing procedures with the Board of Supervisors in such cases. *See* Ordinance No. 2997, Sec. 72.9(d). Defendants failed to give such notice to any of the plaintiffs, nor did they obtain a warrant. *See* Allen Decl.; Harris Decl.; Holt Decl.; Jankowski Decl."); Jones Decl.; Outhout Decl.; Elvin Sikes Decl.; Nina Sikes Decl.; Warren Decl.; Van Schaick Decl.

And the results of this unconstitutional enforcement of Measure N are harsh. On August 1, 2014, for instance, defendants came to the property of plaintiff Nicole Van Schaick bearing guns, cutting instruments, and dressed in camouflage military attire to seize the medical marijuana plants located on her property, while her five children, ages five to twenty-two were present. *See* Van Schaick Decl. ¶6. When asked by Van Schaick's husband for a warrant, one officer stated that he did not need a warrant to raid her property; he, then, threatened to arrest Ms. Van Schaick's husband just for asking for one. *See id.* at ¶8. The officers proceeded to chop down all of Ms. Van Schaick's medical marijuana plants. *Id.* at ¶7.

Furthermore, defendants have repeatedly done this to other medical marijuana patients, often boasting that they did not need warrants, when asked for them, and prying open locks and damaging fences to intrude on the private property of medical marijuana patients when no one was home. *See* Calvanese Decl., Exhibit 1; Allen Decl. ¶6; Harris Decl. ¶4; Outhout Decl. ¶6; Warren Decl. ¶6. In all of the cases reported by plaintiffs, the law enforcement officers breached at least two gates and/or fences of each of the plaintiffs without a warrant or advance notice before encroaching upon and eradicating their property. *See* Allen Decl. ¶6 (photo attached to Calvanese Decl., Exhibit 1); Harris Decl. ¶7 (photo attached to Calvanese Decl., Exhibit 1); Jankowski Decl. ¶8; Jones Decl. ¶5; Warren Decl. ¶6 (photo attached to Calvanese Decl., Exhibit 1); *see also* Holt Decl., Exhibit 2 (photos of raid).

## LEGAL STANDARDS

The plaintiffs in this action seek both a temporary restraining order ("TRO") and a preliminary injunction, which are governed by the same standard. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F.Supp. 1320, 1323 (N.D. Cal. 1995) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."). To obtain a TRO, the plaintiffs must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of the TRO; (3) the balance of equities tips in their

favor; and (4) the issuance of the TRO is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *Doe v. Harris,* 2012 WL 6101870, 3:12-cv-5713-THE (N.D. Cal. Nov. 7, 2012). If the plaintiffs show a "likelihood of irreparable injury and that the injunction is in the public interest," a "preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134-35 (9th Cir. 2011). California law is in accord, *see Whyte v. Schrage Lock Co.* (2002) 101 Cal.App.4th 1443, 1449, and holds that injunctive relief is particularly appropriate where constitutional rights are at issue, or a failure to grant an injunction will result in a multiplicity of suits, *see* Cal. Civil Code § 52.1; Cal. Code of Civil Procedure § 526, subd. (a)(6); *Brock v. Superior Court,* 12 Cal.2d 605, 610 (1939); *Novar Corp. v. Bureau of Collection & Investigative Serv.,* 160 Cal.App.3d 1, 5 (1984).

## ARGUMENT

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.   *Both the United States Constitution and the California Constitution Prohibit Unreasonable Searches and Seizures*

The Fourth Amendment to the United States Constitution and Section 13 of Article I of the California Constitution guarantee the right of individuals to be secure in their houses, papers and effects, free from unreasonable searches and seizures. *See, e.g., People v. Sanchez*, 174 Cal.App.3d 343 (1985). With very narrow exceptions, "a seizure of personal property [is] per se unreasonable . . . unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983); *see United States v. Horton,* 496 U.S. 128, 144 (1990). Even if there is probable cause to believe that a crime has been committed, a warrantless seizure of personal property is unreasonable unless there are exigent circumstances. *Horton*, 496 U.S. at 137 n.7; *Place*, 462 U.S. at 701 [collecting cases]; *see also Horton*, 496 U.S. at 137 n.7 (same for contraband). In assessing the reasonableness of a seizure,

the court must balance the government interests served by the seizure against the possessory interests of the individual.  *See Blair v. Pitchess*, 5 Cal.3d 258, 272 (1971).

As for the privacy and property interests involved in this case, the courts have recognized that people have a right to privacy within their property located near their homes, which is referred by the law as their "curtilage."  *See, e.g., United States v. Dunn*, 480 U.S. 294, 300-301 (1987).  To determine whether a certain area of land falls within the person's curtilage, the Supreme Court has set forth the following four-factor test:

> The proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 301.

If a privacy interest is implicated by an administrative or law enforcement search and seizure, neither the municipality through an ordinance nor the State through its summary abatement procedures can abrogate the warrant requirement of the Fourth Amendment.  *See Leaves v. Waters,* 175 Cal.App.3d 413, 419 (1985); *see also id.* at 418 ("Entries onto private property by administrative functionaries of the government, like searches pursuant to criminal investigation, are governed by the warrant requirement of the Fourth Amendment) (citations omitted).  "In the absence of consent or exigent circumstances, government officials engaged in the abatement of a public nuisance must have a warrant to enter any private property where such entry would invade a constitutionally protected privacy interest."  *Id.*  "[A]bsent exigent circumstances, the need summarily to abate a public nuisance does not of itself justify state invasion of legitimate privacy interests without consent or a warrant."  *Id.* at 416.  Because a municipality's bald designation of a nuisance "does not necessarily make it so," *see Leppo v. City of Petaluma,*, 20 Cal.App.3d 711, 718 (1971); *accord Flahive v. City of Dana Point*, 72 Cal.App.4th, 241, 244 n.4 (1999), the burden is on law enforcement to demonstrate

that exigent circumstances exist to justify such a warrantless seizure.  *See Gleaves v. Waters,* 175 Cal.App.3d 413, 419-20 (1985); *see also United States v. Lefkowitz*, 285 U.S. 452, 464 (1932) ("the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests.  Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime").

        B.        *Defendants Violated Both the State and Federal Constitutions by Encroaching on Plaintiffs' Property and Seizing Their Medicine Without A Warrant*

By seizing the medicine of qualified medical marijuana patients without a warrant, exigent circumstances, or any prior notice, the Lake County defendants have repeatedly violated both the federal and state constitutions.  The declarations of the plaintiffs demonstrate that the property infringed upon was part of their homes' "curtilage."  In most of these cases, the defendants went through multiple locked gates and, in several cases, pried open the locks of theses gates and ignored "No Trespassing" signs to obtain access to the marijuana.  *See* Allen Decl. ¶6 (photo attached to Calvanese Decl., Exhibit 1); Harris Decl. ¶7 (photo attached to Calvanese Decl., Exhibit 1); Jankowski Decl. ¶8; Jones Decl. ¶5;Warren Decl. ¶6 (photo attached to Calvanese Decl., Exhibit 1) Fences were erected around the marijuana at issue to protect the area from public observation, *see generally* Allen Decl.; Warren Decl.; Van Schaick Decl.; Calvanese Decl., Exhibit 1, and the marijuana in these cases was grown in close proximity to the plaintiff's residence, *see generally id.* Under these circumstances, the plaintiffs had a legitimate expectation of privacy in their secured gardens near their homes, which required the defendants to obtain a warrant to encroach upon this property and to destroy plaintiffs' plants.  *See United States v. Struckman*, 603 F.3d 731, 739 (9th Cir.

2010) (defendant's "backyard -- a small, enclosed yard adjacent to a home in a residential neighborhood -- is unquestionably" part of curtilage, and thus police entry without exigent circumstances is unreasonable) (citing *United States v. Romero-Bustamante*, 337 F.3d 1104, 1108 (9th Cir. 2003)); *cf. United States v. Wells*, 648 F.3d 671, 677 (8th Cir. 2011) (recognizing expectation of privacy in "backyard that is accessible only by walking around the side of a home" on unpaved driveway); *State v. Lewis*, 675 N.W.2d 516, 523-24 (Iowa 2004) (where "backyard was located adjacent to the home" and a "fence with a gate completely enclosed the backyard" and "enclosed rear porch was located in the fenced backyard," entry of the yard constituted a search); *see also Wattenburg v. United States*, 388 F.2d 853, 857 (9th Cir. 1968) (search occurred where police went through stockpile of trees located approximately twenty to thirty-five feet from motel, since it was within the motel's curtilege; "we have no hesitancy in holding that the stockpile of Christmas trees here in question was within the curtilege of Waterberg's abode . . and therefore protected by the Fourth Amendment"); *United States v. Breza*, 308 F.3d 430, 436 (4th Cir. 2002) (that entrance to defendant's garden was only 50 feet from house counsels in favor of finding that garden within curtilage); *United States v. Jenkins,* 124 F.3d 768, 773 (6th Cir. 1997) (defendant's backyard within curtilage, as it "is not large and is immediately accessible from a sliding glass door located in the back of the house;" also backyard was "enclosed on three sides by a wire fence" and "yard and the house lie within the same fenced-off area"); *United States v. Reilly*, 76 F.3d 1271, 1278  (2d Cir. 1996) (emphasizing that enclosures at outer edges of property may be viewed by the courts "as a boundary that sets curtilage apart from the open fields"); *State v. Fisher*, 283 Kan. 272, 289, 154 P.3d 455 (2007) (area within curtilage because within enclosure of barbed wire fencing around house; fact that area used for gardening is indicative of curtilage); *State v. Rogers*, 161 Vt. 236, 241-43, 638 A.2d 569 (1993) (garden within curtilage, though 150 feet from house; "gardening is an act often associated with the curtilage of the home").  Defendants' failure to obtain warrants prior to these searches and seizures violates the Fourth Amendment.

As for exigent circumstances, this case bears no relationship to the average run-of-the-mill drug bust, since there is no immediate need to destroy the medicine of those legally entitled to cultivate it under California law.  *See People v. Mower*, 28 Cal.4th 457, 482 (2002) ("As a result of the enactment of [the Compassionate Use Act], the possession and cultivation of marijuana is no more criminal—so long as its conditions are satisfied—than the possession and acquisition of any prescription drug with a physician's prescription."  Just as there are no exigent circumstances to justify the warrantless seizure of prescription medications from the persons who need them, there are none to justify the seizure of medicine from medical marijuana patients.  Defendants can present no evidence that the plaintiffs, and others like them, have any intention of destroying their medicine on their own, *cf. Blair v. Pitchess*, 5 Cal.3d 258, 278 (1971) (noting that government's contention that debtors threatened with confiscation of their property would abscond with their property is not supported by declarations on file), so the warrant requirement creates no more than a minor inconvenience to the defendants to secure a warrant prior to conducting their seizures, as the Constitution demands.  Such a minor inconvenience to law enforcement officials to obtain a warrant does not justify their blatant violation of the Fourth Amendment.[1]

Moreover, a balancing of the interests at stake demonstrates the unreasonableness of the Lake County defendants' raids.  The California electorate has explicitly recognized that marijuana is medicine.  *See* Cal. Health & Saf. Code § 11362.5.  As such, it is a great imposition for law enforcement to seize it from qualified patients.  And, as the defendants are well aware, these seizures of medicine from qualified patients are effectively permanent, since the marijuana plants cannot be

---

[1] The fact that this activity is illegal under federal law is irrelevant to the procedural constitutional protections asserted here.  In *City of Garden Grove v. Superior Court*, 157 Cal.App.4th 355, 386-87 (2007), the court held that the City "fail[ed] to recognize the police cannot retain a person's property without running afoul of basic constitutional considerations.  Particularly, the Fourteenth Amendment to the United States Constitution provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" (citations omitted).

revived once they have been ripped from the soil with machetes and other instruments. In short, the intrusion on the individual plaintiffs from these seizures could not be any more substantial.

On the other side of the balance, by contrast, one would be hard pressed to identify any legitimate interest served by the defendants. *Cf. Zepeda v. INS,* 753 F.2d 719, 727 (9th Cir. 1985) ("The INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"); *see also Mincey v. Arizona*, 437 U.S. 385, 393 (1978) ("privacy of a person's home and property may not be sacrificed in the name of maximum simplicity in enforcement of criminal law"); *Berger v. State of New York,* 388 U.S. 41, 62 (1967) ("we cannot forgive the requirements of the Fourth Amendment in the name of law enforcement"). Instead, these defendants clearly seem motivated by a desire to intimidate medical marijuana patients, which is precisely what the Fourth Amendment, and its state counterpart, were designed to prevent.

Nor can the defendants justify their warrantless paramilitary actions by claiming that all of the victims of their more than thirty seizures voluntarily consented to their harm. *See* http://lakecounty.granicus.com/MediaPlayer.php?view_id=1&clip_id=24 (at 1:43:58) (Defendant Freeman stating that thirty medical marijuana abatement actions occurred in the Spring Valley region of Lake County alone). The defendants pried open locks. *See* Calvanese Decl., Exhibit 1. They broke fences. *See id.* Many of the victims of the defendants' searches and seizures were not home at the time of the raids, so they could not possibly have voluntary consented to them. Indeed, all of the plaintiffs in this case are qualified medical marijuana patients acting in conformity with California law in cultivating the medicine they need to augment their health, so it is hardly conceivable that any of them would have consented to the seizure of their medicine had they not been coerced by defendants. Numerous authorities have established that such acquiescence to a "claim of lawful authority" does not constitute voluntary consent abrogating the need for a warrant. *See, e.g., Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968); *Orhorhaghe v. I.N.S.,* 38 F.3d 488, 500 (9th Cir. 1994) (defendant's consent to search his apartment not valid in light of agent's false "statement at the

doorway that the agents did not need a warrant"); *Unites States v. Molt,* 589 F.2d 1247, 1251-52 (3d

Cir. 1978) (defendant's consent not valid where agents innocently, but falsely told defendant federal

statute authorized them to make warrantless inspection of defendant's business records); *Cooper v.*

*State,* 277 Ga. 282, 291-92, 587 S.E.2d 605 (2003) (false statement by police to defendant that law

requires him to submit to warrantless search invalidates subsequent consent); *Commonwealth v.*

*Krisco Corp.,* 421 Mass. 37, 46, 653 N.E.2d 579 (1995) (consent was "nothing more than

acquiescence to a show of lawful authority" where agent said she "was on the premises for the

purpose of making an administrative inspection") (quoting *Bumper*); *cf. United States v. Baro,* 15

F.3d 563, 587 (6th Cir. 1994) (defendant did not consent to seizure of currency, given agent's

"matter-of-fact declaration" that "I'm going to take this currency"); *United States v. Vasquez,* 638

F.2d 507, 527 (2d Cir. 1980) (defendant did not voluntarily consent to entry, as the matter was

"presented to him as a fait accompli"); *State v. Davis,* 261 Ga. 225, 226-27, 404 S.E.2d 100 (1991)

(consent invalid where police told defendant's mother that "they would break down the door if she

refused"); *State v. Allen,* 188 Mont. 135, 146, 612 P.2d 199 (1980) consent invalid, as it "was only

after officers indicated that they were going to search anyway that defendant helped them");

*Lightford v. State,* 90 Nev. 136, 139, 520 P.2d 955 (1974) (before police asked for consent, one of

them talked about kicking in the door if defendant did not consent); *State v. McGann,* 124 N.H. 101,

106, 467 A.2d 571 (1983) (no valid consent to search of car where authorities indicated their intent to

pry car door open); *see also United States v. Most,* 876 F.2d 191, 199 (D.C. Cir. 1989) (failure to

object or otherwise resist does not constitute "implied consent" for constitutional purposes); *Liberal*

*v. Estrada,* 632 F.3d 1064, 1082-83 (9th Cir. 2012) (consent to search involuntary where plaintiff was

surrounded by seven police officers at night); *State v. Kemp,* 217 P.3d 629, 631 (Okla. Crim. App.

2009) (no voluntary consent, in part, because "there were as many as thirteen officers at the scene,"

many "dressed in military-style tactical uniforms"); *United States v. Reid,* 226 F.3d 1020, 1027 (9th

Cir. 2000) (law enforcement officers' display of weapons negated consent).

Lastly, although the United States Supreme Court has held that "[w]hile 'subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," *Whren v. United States* (1996) 517 U.S. 806, 813, "programmatic purposes may be relevant to the validity of Fourth Amendment intrusions undertaken pursuant to a general scheme without individualized suspicion," *City of Indianapolis v. Edmond*, 531 U.S. 32, 45-46 (2000). Given the defendants' demonstrated hostility towards medical marijuana patients in Lake County since 2012, which led to a Lake County Superior Court Judge enjoining Lake County's enforcement of Ordinance No. 2977 on due process grounds, *see* Elford Decl., Exhibit 1, their refusal to seek warrants, and, instead, act as the law unto their own underscores the unreasonableness of their actions. Motivated by such animosity towards medical marijuana patients, the defendants' pattern and practice of coming to the homes of such seriously ill persons without warrants or advance notice is unconstitutional. *Cf. In re Randy G.*, 26 Cal.4th 556, 567 (2001) ("detentions of minor students on school grounds do not offend the Constitution, so long as they are not arbitrary, capricious, or for the purposes of harassment").

C.      *The Defendants' Actions Violate Due Process*

        1.      *Due Process Requires Advance Notice and a Hearing Before Property Is Taken by the Government, Especially When That Property Is a "Life Essential"*

The actions of the defendants violate due process for similar reasons. The central due process precept is that an individual is guaranteed a right to a hearing *before* he is deprived of a significant property interest, except under "extraordinary circumstances." *Randone v. Appellate Department of Superior Court of Sacramento County*, 5 Cal.3d 536, 547, 550 (1971) (emphasis added); see *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 342 (1969) (Harlan, J., concurring); *see also Boddie v. Connecticut*, 401 U.S. 371, 377 (1971) (holding that due process requires meaningful opportunity to be heard prior to being subjected by force of law to significant deprivation, "absent countervailing state interest of overriding significance"). To satisfy due process, a procedure authorizing the deprivation of a property interest without prior notice and hearing must be carefully

tailored to limit its effect to such "extraordinary" situations. *See Randone*, 5 Cal.3d at 547. Furthermore, where "necessities of life" are at stake, the process that is due increases concomitantly – a policy that is drafted so broadly as to permit even the temporary deprivation of one's "life necessities" prior to a hearing may, for this reason alone, violate due process. *See id.* at 547 & 558.

> 2. *The Practice of Lake County Officials in Seizing the Property of Medical Marijuana Patients Without Prior Notice and an Opportunity to be Heard Violates Due Process*

The first inquiry under the due process clause of both the state and federal constitutions is whether there is a liberty or property interest at stake. The California courts have already determined this is so, *see County of Butte*, 175 Cal.App.4th at 736; *City of Garden Grove*, 157 Cal.App.4th at 386-87, which is binding on this Court, *see Muniz v. United Parcel Serv., Inc.,* 738 F.3d 214, 291 (9th Cir. 2013) ("the Ninth Circuit follows published decisions of the state's intermediate appellate courts absent convincing evidence that the state's highest court would decide the matter differently"); *see also Washington v. Glucksberg*, 521 U.S. 702, 776 (1997) ("'[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body' in relation to his medical needs") (Souter, J., concurring) (quoting *Schloendorff v. Society of New York Hospital*, 211 N.Y. 125, 129, 105 N.E. 92, 93 (1914)). Knowing this, as well as their usual required procedures and, presumably, California law, the defendants should have, but did not afford any advance notice to the plaintiffs before storming their property and destroying their medicine. *Cf. County of Butte,* 175 Cal.App.4th at 736 ("the court in *Garden Grove* determined that because the defendant was legally entitled to possess the marijuana, due process and fundamental fairness dictated it be returned to him. . . . We believe the same considerations of due process and fundamental fairness are operative in the present case.").

To the contrary, it appears from defendants' testimony before the Lake County Board of Supervisors and emails to representatives for the plaintiffs is that they are entitled to "summarily abate" medical marijuana cultivation without a warrant or advance notice because Measure N

provides fort the summary abatement where "[u]nlawful medical marijuana cultivation . . . constitutes an immediate threat or danger to the health, safety and welfare of the public," pursuant to Government Code Section 25845. *See* Ordinance No. 2997, Sec. 72.8.

Putting aside for the moment the fact that the defendants clearly ignored the advance notice requirements of their own Ordinances, *see* Ordinance No. 2997, Sec. 72.9; *cf. Friedman v. City of Los Angeles,* 52 Cal.App.3d 317, 320 (1975) (failure of government entity to follow its own stated procedures is one factor to determine whether requirements of due process have been satisfied in abatement context), their repeated encroachments on private property are subject to constitutional requirements of due process, even if they *had* complied with such ordinances and State law, which they did not. *See Friedman,* 52 Cal.App.3d at 321; *Leppo v. City of Petaluma,* 20 Cal.App.3d 711, 718 (1971). "In the absence of an absolute emergency, essential elements of due process of law include notice and opportunity to be heard." *Friedman*, 52 Cal.app.3d at 321 (citation omitted).

Consider first, the Ordinance itself, which generally requires five days advance notice of an abatement action, unless the marijuana cultivation "constitutes an immediate threat or danger to the health, safety and welfare of the public." *See* Ordinance No. 2997 (Elford Decl., Exhibit 1), Secs. 72.8 & 72.9. While the Ordinance allows for "summary abatement" under such extraordinary circumstances, such as is might be the case where someone is stealing water or electricity, this was not the case with *any* of the plaintiffs here and, instead, the defendants arbitrarily and unreasonably construed this provision as authorizing summary abatement in *all c*ases. In short, the Lake County defendants have violated the letter and spirit of Measure N itself, and, in so doing, have violated the due process clauses of both the federal and state constitutions.

In *County of Butte v. Superior Court*, 175 Cal.App.4th 729, the court considered whether a qualified medical marijuana patient could state a civil cause of action for the violation of his right to due process because of the warrantless seizure of his medicine without advance notice and an opportunity to be heard. The court held in the affirmative, reasoning as follows:

> [W]e see an opportunity for an individual to request the same constitutional we see an opportunity for an individual to request the same constitutional guarantee of due process available to all individuals, no matter what their status, under the state Constitution. The fact that this case involves medical marijuana and a qualified medical marijuana patient does not change these fundamental constitutional rights or an individual's right to assert them.

*Id.* at 739; *accord Garden Grove*, 157 Cal.App.4th at 386-87.

And, in *Flahive v. City of Dana Point*, 72 Cal.App.4th 241 (1999), the court explained that the State statute authorizing the "summary abatement" of nuisances, Government Code § 25845, does not explain what procedures are necessary to accomplish them, *see id.* at 245, so the court expressed its concerns about summary abatements effectuated without notice and an opportunity to be heard, as required by the due process clause:

> Using "summary abatement" to refer to all abatements accomplished without a civil action, however, is problematic. Absent an emergency situation, minimum administrative due process protections are required before the physical abatement. (*Leppo v. City of Petaluma, supra,* 20 Cal.App.3d at p. 717, 97 Cal.Rptr. 840; see also *Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 276, 286-301, 58 Cal.Rptr.2d 721.) Those instances where a hearing is required should be distinguished from those where an emergency excuses one.

*Id.* Here, no such distinction was made by the defendants, as the Lake County authorities believed that "summary abatement" of medical marijuana cultivation was appropriate in *all* cases, so they gave the property owners *no* advance notice in *any* of the cases. As the court indicated in *Flahive*, this violates due process.

To like effect is *Leppo v. City of Petaluma*, 20 Cal.App.3d 711 (1971), wherein the court held that the city failed to meet its burden of demonstrating exigent circumstances necessary to justify its summary abatement of property without notice. The court observed that "[t]he official duty of the city in a case in which they seek to abate a nuisance is to afford the property owner a due process hearing which consists of an opportunity to be heard." *Id.* at 717 (citation omitted). The court, then, observed as follows:

Although it is elementary that an owner of property has no constitutional right to maintain it as a public nuisance, it is equally elementary that he has a clear constitutional right to have it determined by due process whether in fact and law it is such a nuisance. As against this right, no ex parte declaration, however, formal, by municipal authorities that it is a nuisance is final against him.

"... But neither at common law nor under such express [statutory] power can it, by its mere declaration that specified property is a nuisance, make it one when in fact it is not." (14 A.L.R.2d § 8, p. 82.)

It is clear that the respondents were not afforded a due process hearing either in the form of a judicial determination of a hearing before an administrative body in which respondents had an opportunity to present evidence and cross-examine the city's witnesses. . . .

In an emergency situation involving the physical safety of the populace, the city could dispense with a due process hearing and [summarily abate a nuisance]. . . . Although the city acted pursuant to Government Code sections which provide for the summary abatement of nuisances by the city (citations omitted), these sections "like every other legislative, executive, or judicial power, . . . are subject to Article I, Section 13 of our California Constitution." (Citation omitted).

*Id.* at 718. The court held that the burden of proof lies squarely with the municipality to establish by a preponderance of the evidence that an emergency situation *actually existed* to justify the lack of due process. *See id.* at 719.

Furthermore, because the defendants are depriving the plaintiffs, and others like them, of a "necessity of life," their practice must be narrowly drawn to those "extraordinary situations" which serve a state interest of "overriding significance." *See Randone v. Appellate Department*, 5 Cal.3d 536, 560; see also *Sokol v. Public Utilities Comm'n,* 65 Cal.2d 247, 254-56 (1966) (curtailment of telephone service constitutes significant property interest as to require due process). As was demonstrated in Part 1.D, *supra*, the Lake County pattern of immediate abatement falls well short of meeting this standard. The nature of the risk for these small quantities of personal use of marijuana in compliance with State law does not require any immediate action to prevent serious harm to the public. In short, the Lake County practice is not narrowly drawn to apply "only when great necessity actually arose." *Cf. id.* at 554. This, yet again, violates due process. *Cf. id.* at p. 557 n.20.

Underscoring this point is *Randone*, *supra*, wherein the Supreme Court of California struck down as violative of due process a statute generally permitting the attachment of any property of a debtor, including life necessities, without prior notice or hearing.  The Court stressed that "extreme hardship arises not only from the attachment of liquid assets, such as wages or bank account proceeds, but also from the summary seizure of such items of personal property as 'television sets, refrigerators, stoves, and sewing machines, and furniture of all kinds' (*Blair v. Pitchess*, 5 Cal.3d 258, 279 (1971), items that might loosely be described as 'necessities' in our modern society." *Id*. at p. 560.  The Court found unconstitutional the sanction of a prehearing attachment because it was so "brutal" in its application and, due to the severe pressure on the debtor to settle, effectively deprives them any hearing on the merits of the creditor's claim.  *Id.* at 561-62 (quoting *Goldberg v. Kelly,* 397 U.S. 254, 261 (1970)).  The Court concluded that the statute authorizing the prehearing attachment was unconstitutional on its face, especially because it disproportionately impacted those who are most in need.  *Id.* at 563-64.

The same is true here.  Even more so than a furniture or television set, medicine is a life necessity.  Not only will qualified medical marijuana patients suffer the embarrassment and humiliation of being treated like criminals when complying with California law, but they will endure severe pain (or worse) from the deprivation of their medicine.  The uprooting of medical marijuana plants without prior notice will effectively deprive the victim of the seizure any hearing on the legality of his marijuana cultivation, since the plants are effectively dead upon the officer' chopping them down.  *Cf. Kash Enterprises, Inc. v. City of Los Angeles*, 19 Cal.3d 294, 309 (1977) (collateral judicial remedy is insufficient because it "would place on the party whose property has been taken the additional financial burden of instituting an action for the property's return").  As a group, medical marijuana patients are poor and sick.  As in *Randone*, they are "those especially in need of the protection afforded by [due] process [and] in the instant case, [] include[] those whose very necessities of life [have been] taken from them without a prior opportunity to show the invalidity of

[Lake County's] claim."  *See Randone*, *supra*, 5 Cal.3d at 563-64; *see also Washington v. Glucksburg* (1997) 521 U.S. 702, 731, 117 S.Ct. 2258, 2273 ["the State has an interest in protecting vulnerable groups—including the poor, the elderly, and disabled persons—from abuse, neglect, and mistakes."). Targeting the needy in this draconian fashion, the Lake County defendants have violated due process.

## II. IMMEDIATE INJUNCTIVE RELIEF IS NECEESSARY TO STOP THE UNCONSTITUTIONAL SEIZURE OF MEDICINE FROM SERIOUSLY ILL PERSONS WITHOUT WARRANTS OR PRIOR NOTICE

Because the Lake County practice of destroying medical marijuana plants without a warrant or fair notice violates the warrant requirement and that of due process, it should be enjoined immediately.  Not only does the County effectively concede that it has "summarily abated" no less than thirty medical marijuana cultivation sites on private property in Lake County, *see* http://lakecounty.granicus.com/MediaPlayer.php?view_id=1&clip_id=24 (at 1:43:58) (Defendant Freeman stating that thirty medical marijuana abatement actions occurred in the Spring Valley region of Lake County alone), but they have continued to do this in other parts of the County.  Unless and until the defendants are enjoined by this Court from continuing these warrantless intrusions of property without notice, seriously ill persons, like the named individual plaintiffs, will continue to lose their medicine and suffer deleterious health effects from not having their medicine when it otherwise would have been available to them.  No remedy coming after these seizures can undo the suffering of these persons from their inability to use their medicine.  The established authorities make clear that this constitutes irreparable harm.

That an injunction should extend to all medical marijuana patients in Lake County is underscored by this Court's decision in *NORML v. Mullen*, 608 F.Supp. 945 (N.D. Cal. 1985), wherein plaintiffs sought and obtained a preliminary injunction preventing the defendants conducting warrantless searches and seizures of marijuana, as well as the unjustified surveillance of plaintiffs' homes through the use of helicopters.  After noting that "at least one locked structure was entered [by defendants] when no one was home," *id.* at 953, the court held on the merits that:

This CAMP policy would seem to epitomize the very practices that the fourth amendment was designed to prevent, *e.g. Coolidge v. New Hampshire*, 403 U.S. 443, 449, 91 S.Ct. 2022, 2029, 29 L.Ed.2d 564 (1971), and the warrantless searches alleged by the declarants appear to be *per se* unreasonable and violative of the fourth amendment. The burden is on the government to show that these searches fall within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. [Citations].

* * *

[T]o base probable cause for a search of a neighbor's home or curtilage on the mere fact that a marijuana garden may be visible from [other] property is to render meaningless the fourth amendment; such a theory would give any officer in any potentially risky law enforcement situation *carte blanche* to conduct warrantless searches and seizures virtually anywhere in the vicinity of a crime. [Citation]

*Id.* at 953-55.

As for the scope of the injunction it would issue, the court observed as follows:

[I]t is a legal commonplace that injunctive relief is available when constitutional rights are being violated, regardless of a damages remedy at law. *E.g. Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960); *see generally* Wright & Miller § 2948 & n. 39 (1973 & Supp. 1984). The very purpose of the preliminary injunction is to prevent the irreparable loss of rights before judgment, *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir. 1984) and the right to be free from unreasonable searches and seizures is so central to our constitutional democracy that any deprivation of that right constitutes irreparable harm.

*Id.* at 962. The court noted that there was a serious possibility of repeated constitutional violations in the future, since "the plaintiffs in the present action live in sparsely populated rural areas where marijuana cultivation is rife. These are the areas where CAMP plans to return repeatedly each season until the growers throw in the towel." *Id.* "Since the effectiveness of the CAMP program rests in part on its perseverance in returning to the same area from season to season, the probabilities are high that the plaintiffs in this case will suffer injury for years to come. Plaintiffs are therefore entitled to request injunctive relief." *Id.* The court extended such interim injunctive relief to all similarly situated persons, since "[w]ithout class-wide relief, the plaintiffs would be at significant risk for repeated rights violations, and the preliminary injunction would be rendered meaningless." *Id.* at

964. "The testimony of parties and nonparties alike strongly suggests that these policies have led to ongoing, widespread, and uniform rights violations. As with statutes that purport to authorize police to violate the fourth amendment, this court has a duty to strike down those agency policies that by their own terms virtually ensure fourth amendment violations." *Id.* at 964 (footnote and citations omitted). "Thus if the plaintiffs in this case prevail after a trial on the merits, the challenged CAMP policies will be invalidated, and all California residents necessarily will be protected by the declaration and permanent injunction. The nonparties will receive no broader relief from the preliminary injunction now than they would be entitled to after such a judgment." *Id.* The same is true here, as declaratory relief for the plaintiffs will effectively require the defendants to obtain warrants and provide advance notice to individuals in the future before they "summarily abate" their medicine.

Likewise, in *International Union of Bricklayers and Allied Craftsmen v. Meese*, 616 F.Supp. 1387 (N.D. Cal. 1985), this Court held that "[b]oth the Supreme Court and the Ninth Circuit have permitted courts to issue declaratory and injunctive relief in membership suits without the necessity of class certification." *Id.* at 1405 (collecting citations). Injunctive relief for all of the medical marijuana patients in Lake County is warranted by the representation of these putative plaintiffs by California NORML.

Underscoring these points is *Blair v. Pitchess*, 5 Cal.3d 258 (1971), wherein the Supreme Court of California affirmed a permanent injunction entered in favor of plaintiffs restraining the Sheriff of Los Angeles and his employees from seizing property before a hearing on the propriety of the taking. *Id.* at p. 267. At issue in *Blair* was a claim and delivery statute authorizing the seizure of a tenant's personal property upon the filing of a complaint and affidavit by the plaintiff stating that: he is entitled to the property, that the defendant is wrongfully detaining it, and the property is unencumbered. *Id.* at 265. Despite the fact that the statute provided for a post-deprivation hearing

for the return of the property, the Court found it to violate the constitutional prohibition against unreasonable searches and seizures, as well as the due process clause. *Id.* at pp. 276 & 280. The Court reasoned as follows:

> An injunction is particularly appropriate in this case for no other remedy would give effective relief to the majority of persons whose property was illegally seized. In most cases, the defendant would be unable to obtain any relief prior to the seizure of his property. But as we have seen the removal of his goods often occasions irreparable harm. No judicial remedy can restore the privacy shattered by an illegal search. Nor can the subsequent return of property compensate for or repair the suffering caused a family by temporary loss of appliances indispensable to its day to day living. A post-seizure remedy in such cases grants no effective relief; hence, the preventative remedy afforded by the instant injunction is particularly appropriate.

*Id.* at pp. 283-84. These words are equally applicable here, as the Lake County authorities *stepped up* their enforcement efforts against medical marijuana patients after the court issued a temporary restraining order with respect to the plaintiffs only in 2012, which prompted the Superior Court to extend the injunctive relief it provided to all qualified patients of Lake County. *See* Elford Decl. Even more so than appliances, medicine is indispensable to one's day to day living, especially where it enables one to eat or if it grants him relief from unbearable pain. As in *Blair*, and the other authorities cited above, an immediate injunction is necessary to put an end to the continuing constitutional violations perpetrated by the defendants.

## CONCLUSION

For the foregoing reasons, this Court should grant plaintiffs' requested temporary restraining order and request for a preliminary injunction.


DATED: September 1, 2014                     Respectfully Submitted,

                                                       ___/S/  Joseph D. Elford_____
                                                       JOSEPH D. ELFORD

                                                       Counsel for Plaintiffs