UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONA ALLEN, et al.,

    Plaintiffs,

v.

COUNTY OF LAKE, et al.,

    Defendants.

Case No. 14-cv-03934-TEH

**ORDER DENYING PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER**

Plaintiffs Mona Allen, et al., seek a temporary restraining order ("TRO") to enjoin Defendants County of Lake, et al., from engaging in what Plaintiffs allege to be unconstitutional abatement actions against growers of medicinal marijuana in the County of Lake. September 1, 2014 Amended Application for a Temporary Restraining Order (Docket No. 5). On September 2, 2014, this Court heard the oral arguments of both parties concerning the issuance of a TRO. Upon the Court's request, Plaintiffs filed a supplemental brief on the issue of irreparable harm absent a TRO. September 3, 2014 Supplemental Brief (Docket No. 24). After carefully considering Plaintiffs' submissions and the oral arguments of both parties, the Court now DENIES the application for a temporary restraining order for the reasons set forth below.

**I.    LEGAL STANDARD**

In order to obtain a TRO, Plaintiffs must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of a TRO; (3) the balance of equities tips in their favor; and (4) the issuance of the TRO is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting forth standard for preliminary injunction); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary

1    injunction."). A stronger showing on one of these four elements may offset a weaker
2    showing on another, but the movant must nonetheless "make a showing on all four
3    prongs." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

## II. DISCUSSION

### Plaintiffs Have Not Proven the Likelihood of Irreparable Harm

Plaintiffs put forward two theories of the irreparable harm they would suffer in the absence of a TRO. First, they claim that the loss of a sense of security from the raids that have already occurred constitutes an ongoing irreparable injury, demanding the relief of a temporary restraining order. September 3, 2014 Supplemental Brief at 2-3 (Docket No. 24) ("[P]laintiffs have alleged that the unconstitutional violations implicated by this suit . . . instilled fear in the plaintiffs and all citizens of Lake County."). In the alternative, Plaintiffs suggest that their property will be unconstitutionally seized in the future, either for the first or second time. *See id.* at 3 (arguing that a pattern or practice can be used to show that violations "can recur with respect to any of the individually named plaintiffs or the members of [California NORML]"). Because the Court finds neither argument persuasive, the application for a temporary restraining order is denied.

### A. Mere Loss of Security Does Not Justify a TRO in This Case

Plaintiffs have not produced a single case holding that the loss of security resulting from a previous violation of constitutional rights is itself an irreparable injury requiring injunctive relief. In any event, such a case would contradict the Supreme Court decision of *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In that case, in the context of whether the victim of a police chokehold had pled a sufficient injury for standing purposes, the Court explained that "It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Id.* at 107 n.8 (emphasis in original).

In their supplemental briefing, Plaintiffs point to cases in which a pattern or practice of constitutional violations was found to be sufficient to constitute irreparable injury for

2

1  purposes of a TRO or preliminary injunction.  *See Melendres v. Arpaio*, 695 F.3d 990,
2  1002 (9th Cir. 2012); *LaDuke v. Nelson*, 762 F.2d 1318, 1326 (9th Cir. 1985).  However,
3  in those cases, the courts did not find that the irreparable injury was the mere loss of
4  security that follows the deprivation of a constitutional right; rather, the irreparable injuries
5  were unlawful detention (*Melendres*, 695 F.3d at 994) and warrantless farm inspections
6  (*LaDuke*, 762 F.2d at 1321).  And in both cases, the plaintiffs succeeded because they
7  could show a likelihood that these specific injuries would be repeated in the future.
8  *Melendres*, 695 F.3d at 1002; *LaDuke*, 762 F.2d at 1324. ("[T]he district court in this case
9  made a specific finding of likely recurrence.")

10  It is true that one district court in a different district granted a preliminary injunction
11  after finding that "exposure to [an unconstitutional] policy is both itself an ongoing harm
12  and evidence that there is 'sufficient likelihood' that Plaintiffs' rights will be violated
13  again."  *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011).  However,
14  in affirming the injunction on appeal, the Ninth Circuit did not endorse the idea that
15  "exposure to a policy" is "itself an ongoing harm"; rather, the court of appeals held that the
16  district court did not abuse its discretion in concluding "Plaintiffs faced a real possibility
17  that they would again be stopped or detained and subjected to unlawful detention on the
18  basis of their unlawful presence alone."  695 F.3d at 990.

19  Plaintiffs also rely on *International Union of Bricklayers and Allied Craftsmen v.*
20  *Meese*, 616 F. Supp. 1387 (N.D. Cal. 1985), a case in which union members challenged the
21  federal government's grant of foreign worker visas under the relatively lenient B-1 visa
22  category, rather than the more stringent H-2 category.  However, nothing in that case
23  suggests that the loss of a sense of security following a violation of one's rights constitutes
24  irreparable injury for purposes of injunctive relief.  The injuries alleged by the plaintiff
25  union members in *International Union of Bricklayers* were the deprivation of the
26  opportunity to compete for employment on bricklaying projects, and the denial of the labor
27  certification process protections of the H-2 temporary worker visa category.  616 F. Supp.
28  at 1394.  These are primarily economic injuries, concerning the plaintiffs' ability to

3

1  compete for and obtain jobs, rather than an abstract sense of insecurity. Moreover, the
2  court in that case denied plaintiffs' request for a temporary restraining order, and limited
3  its preliminary injunction to apply to the group of foreign workers that were working on a
4  bricklaying project at the time. *Id.* at 1393. This is a further indication that the court
5  granted the preliminary injunction in order to protect the ability of the union workers to
6  compete for a specific project, rather than to maintain their "sense of security" in a more
7  general sense.

### B.  Plaintiffs Have Not Shown a Likelihood of Future Injury

9  Plaintiffs also suggest that additional raids would constitute an irreparable injury.
10 Plaintiffs are required to put forward some evidence so that the Court can conclude that
11 such future injuries are likely. *Lyons*, 461 U.S. at 111. One way in which likelihood of
12 future injury can be shown is if the policy is officially endorsed by the government.
13 *Melendres*, 695 F.3d at 1002; *LaDuke*, 762 F.3d at 1324. An individual's experience of
14 repeated and ongoing violations can also provide support for the likelihood of irreparable
15 harm absent injunctive relief. *NORML v. Mullen*, 608 F. Supp. 945, 962 (N.D. Cal. 1985).

16 Attempting to show that the possibility of future raids constitutes an irreparable
17 harm, Plaintiffs cite *NORML*, *id*. Plaintiffs' Amended Application at 19-21 (Docket No.
18 5). In that case, the District Court granted a preliminary injunction against the
19 unconstitutional use of helicopters and warrantless searches as part of a public campaign
20 against marijuana cultivation known as the "Campaign Against Marijuana Planting"
21 ("CAMP"). *Id.* at 945. Raids on marijuana growers by CAMP authorities involved the
22 publicly-acknowledged practice of entering neighboring properties without a warrant,
23 ostensibly to protect against potential threats to the raiding agents. *Id.* at 953-53.
24 Importantly, CAMP policy explicitly included the practice of returning repeatedly each
25 season until growers "thr[e]w in the towel." *Id.* at 962. As a result, the plaintiffs in
26 *NORML* were subjected to unconstitutional CAMP activities, including low-flying
27 helicopters and invasive searches, on a repeated basis. *Id.* at 957. The district court noted
28 that because "the effectiveness of the CAMP program rest[ed] in part on its perseverance

4

in returning to the same areas from season to season, the probabilities [were] high that the plaintiffs in [that] case [would] suffer injury for years to come." *Id.* at 962. It was because of this explicit policy of repeating the alleged constitutional injury that the court found the plaintiffs entitled to injunctive relief. *Id.*

The case before the Court is highly distinguishable. Unlike in *NORML*, Plaintiffs have provided no evidence that Lake County intends to conduct additional searches or seizures against the named or Doe Plaintiffs. Mere speculation about the intentions of the County is not enough. Importantly, the Ordinance in this case, unlike the CAMP policy in *NORML*, does not explicitly rely upon "returning to the same areas" with the objective of tiring out targeted growers. Further, Plaintiffs have neither alleged nor demonstrated that they have been subjected to the unconstitutional activities repeatedly. Assuming Plaintiffs' allegations are true, the identified Plaintiffs have already lost their marijuana plants and had their privacy invaded. Absent additional evidence, Plaintiffs' fear of prospective police intrusion appears to be little more than "subjective apprehensions," rather than "the *reality* of the threat of repeated injury." *See Lyons*, 461 U.S. at 107 n. 8. Ultimately, the "emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Id.* Without some evidence that Defendants' might violate the Constitutional rights of Plaintiffs in the next fourteen days, a TRO is unjustified.

Similarly, Plaintiffs err in their reliance on *Blair v. Pitchess*, 5 Cal. 3d 258 (1971). In *Blair*, the California Supreme Court determined that a preliminary injunction was necessary to prevent the irreparable harm resulting from warrantless seizure of property without notice in accordance with California's claim and delivery law. In that case, however, the plaintiffs had standing to sue, and faced irreparable harm absent an injunction, because they were Los Angeles County residents relying on the state's taxpayer standing provision. *Id.* at 269-70. As a result, some plaintiffs faced the actual threat of having their property unconstitutionally seized absent an injunction. The same cannot be said of Plaintiffs in this case. Here, Plaintiffs' counsel has failed to identify a single

5

resident of Lake County that is a Plaintiff to this action and under threat of having their marijuana plants summarily abated absent a TRO.  Consequently, unlike in *Blair*, a TRO provides no legally cognizable relief to Plaintiffs and is therefore improper.

The importance of the problematic conduct being both *officially authorized* and *likely to be repeated* was crucial to the decisions on which Plaintiffs rely in their supplemental brief.  *LaDuke*, 762 F.3d at 1324 ("[T]he district court in this case made a specific finding of likely recurrence . . . [and] explicitly found that the defendants engaged in a standard pattern of officially sanctioned officer behavior."); *Thomas*, 978 F.2d at 509 ("The record in this case does not yet contain a sufficient basis on which to evaluate the likelihood of the plaintiffs' succeeding on the merits in establishing, not merely misconduct, but a pervasive pattern of misconduct reflecting departmental policy.").

Plaintiffs' mere identification of these cases and reliance on the declarations already submitted is insufficient to show either that Defendants have an official policy authorizing the behavior complained of, or that any individual plaintiff is likely to be harmed again anytime soon.  Regarding the first prong, Plaintiffs contend that "The crux of this case[] is not about the arbitrary limitations of Measure N, but, rather, is about the arbitrary and unconstitutional way that it is being enforced."  Amended Complaint at ¶ 9 (Docket No. 4).  At oral argument, Plaintiffs were unable to clearly answer whether Ordinance 2997 authorizes the alleged conduct, or rather whether the defendant officers were acting ultra vires.  Without Plaintiffs more fully articulating this aspect of their claim, the Court cannot find that the problematic behavior was officially authorized, and therefore that Plaintiffs face a "real possibility" that they will be raided again.

Moreover, Plaintiffs have not yet put forward sufficient evidence to find a probability of future irreparable harm.  For those plaintiffs who have already been raided, there is no evidence that they will be raided again anytime soon; the natural inference is that they will not be, unless marijuana plants grow exceedingly quickly.  And Plaintiffs have not identified any individual among them who has not yet been raided, nor any evidence suggesting that the raid of such a person's property is "likely."  In short,

Plaintiffs have not given the Court enough to decide that they face a likelihood of irreparable harm absent a TRO. Plaintiffs therefore have not met the requirements for the issuance of a TRO.

### III. CONCLUSION

Plaintiffs' application for a temporary restraining order is DENIED. The parties shall meet and confer on a briefing and hearing schedule on Plaintiffs' motion for a preliminary injunction and file a stipulation and proposed order, or a joint statement setting forth their areas of agreement and disagreement, on or before September 12, 2014.

**IT IS SO ORDERED.**

Dated: 09/04/2014 _____
THELTON E. HENDERSON
United States District Judge

7