UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONA ALLEN, et al.,

　　　　　　　　Plaintiffs,

　　　v.

COUNTY OF LAKE, et al.,

　　　　　　　　Defendants.

Case No. 14-cv-03934-TEH

**ORDER GRANTING PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

　　　　A group of medical marijuana patients ("Plaintiffs") seek a preliminary injunction against Defendants, the County of Lake and certain law enforcement officials, prohibiting abatement actions against them without notice or a warrant.  September 17, 2014 Supplemental Brief (Docket No. 34); September 1, 2014 Amended Ex Parte Application (Docket No. 5).  In accordance with the Court's expedited briefing schedule, Defendants filed their opposition on September 29, 2014.  (Docket No. 47).  The Court heard oral argument on October 6, 2014.  After carefully considering the parties' written and oral submissions, the Court now GRANTS Plaintiffs' Motion for Preliminary Injunction for the reasons set forth below.

**BACKGROUND**

　　　　On July 11, 2014, Lake County Ordinance No. 2997 went into effect, regulating medical marijuana cultivation within the County of Lake.  Opp'n at 1.  Among other things, the Ordinance prohibits: any marijuana growth on vacant parcels, any outdoor growth on parcels of one acre or less, growing more than six mature or twelve immature plants on parcels greater than one acre located outside of a Community Growth Boundary (except for qualifying marijuana collectives), and using more than 100 square feet to grow marijuana indoors.  Lake County Ordinance No. 2997 §§ 72.5-72.6.  In August of 2014, law enforcement officers from the County Sheriff's Department, occasionally

accompanied by officials from the Lake County Community Development Department and the California Fish and Game Department, allegedly conducted at least seven warrantless searches of medical marijuana patients' residential properties without notice in Lake County. Allen, Harris, Holt, Jones, Outhout, Sikes, Van Schaick, and Warren Decls. (Docket Nos. 6, 9, 10, 12-17). Allegedly, during these searches, these individuals' marijuana plants were seized, also without warrants. *See id.*

According to the Plaintiffs, some residents were not home when the officers conducted these searches and seizures. Allen, Harris, Outhout, and Warren Decls. In one case, officers lifted a gate off of its hinges to gain access. Jones Decl. In other cases, officers apparently pried locks off of gates. Allen, Harris and Warren Decls. One Plaintiff claims that when her husband asked to see a warrant he was threatened with arrest. Van Schaick Decl. In at least four cases, the officers left "Summary Abatement" notices, indicating their plants had been seized pursuant to Ordinance No. 2997. Holt, Outhout, Sikes and Van Schaick Decls.

On September 1, Plaintiffs filed an amended complaint in this case along with an application for a temporary restraining order ("TRO") and preliminary injunction. *See* Amended Complaint (Docket No. 4); Amended Ex Parte Application (Docket No. 5). The Court denied the TRO application because Plaintiffs had not demonstrated a likelihood of future irreparable harm after their plants had already been seized. September 4, 2014 Order at 2 (Docket No. 26). After the denial of Plaintiffs' TRO, Plaintiffs were permitted to file supplemental briefing on the Motion for Preliminary Injunction, which they did. September 17, 2014 Supplemental Brief (Docket No. 34). Defendants subsequently filed their opposition, and the Court heard oral argument on October 6. As a separate matter, Defendants have also moved to dismiss Plaintiffs' Complaint on a number of legal grounds, including Plaintiffs' failure to state a claim against the individual defendants. Mots. to Dismiss (Docket Nos. 46 & 56).

//

//

2

**LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). While a plaintiff is required to make "a showing on all four prongs," there is nonetheless some interplay between them; for example, a plaintiff can show likely success on the merits by only raising "serious questions going to the merits," so long as "a balance of hardships . . . tips sharply towards the plaintiff . . . ." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). In this respect, the Ninth Circuit employs a sliding scale approach to these factors, wherein "the elements of the preliminary injunction test are balanced so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131.

Where the alleged harm is the result of police misconduct, a plaintiff can show that such harm is likely to recur by either identifying a written policy from which such injury would stem, or by demonstrating that the injury was part of a pattern of officially sanctioned behavior. *Melendres v. Arpaio*, 695 F.3d 990, 997-98 (9th Cir. 2012). However, the plaintiff must still show that he is likely to be subject to such policy or pattern in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108-09 (1983).

**DISCUSSION**

**Plaintiffs Do Not Have a Heightened Standard for Obtaining a Preliminary Injunction**

Although the parties agree that *Winter* provides the governing four-prong test for a preliminary injunction, they dispute the weight of the Plaintiffs' burden in this case. Specifically, Defendants argue that Plaintiffs must show that all four factors "weigh heavily and compellingly in [Plaintiffs'] favor," because the injunctive relief sought will "disturb the status quo" and "provide the movant substantially all the relief he may recover

3

United States District Court
Northern District of California

1    after a full trial on the merits." Opp'n at 3-4 (citing *SCFC ILC, Inc. v. Visa, USA, Inc.*, 936

2    F.2d 1096, 1098 (10th Cir. 1991); *Dahl v. HEM Pharmaceuticals Corp*, 7 F.3d 1399, 1403

3    (9th Cir. 1993); *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984)).

4    However, Defendants' argument for a heightened burden is unconvincing.  First, the

5    primary case cited for this heightened standard is from the Tenth Circuit; the only Ninth

6    Circuit cases cited stand for the separate claim that "heightened scrutiny" applies to

7    mandatory injunctions, not negative injunctions such as the one in this case.  *Compare*

8    *SCFC ILC*, 936 F.2d at 1098, *with Dahl*, 7 F.3d at 1403, *and Martin*, 740 F.2d at 675.

9    Second, the argument that an injunction here would disturb the status quo carries little

10   force where the status quo is the warrantless search and seizure of private property

11   unjustified by a recognized exception to the warrant requirement.  Finally, in addition to

12   seeking injunctive relief, Plaintiffs seek declaratory relief and damages, so an injunction

13   here will not constitute "substantially all" of the relief sought, as Defendants contend.

14   Moreover, as discussed below, the injunction here is required to prevent Fourth

15   Amendment violations, but Plaintiffs make several additional claims under theories of due

16   process and state law.

17        For the foregoing reasons, Plaintiffs are not required to meet the heightened

18   standard for obtaining a preliminary injunction as argued by Defendants.  Accordingly, the

19   Court now applies the traditional *Winter* test in determining whether to grant Plaintiffs'

20   request for a preliminary injunction.

21

22   **I.  Prong One: Plaintiffs Are Likely to Succeed on the Merits**

23        Given the evidence currently before the Court, Plaintiffs are likely to succeed on the

24   merits of their claim that the warrantless summary abatement of their medical marijuana

25   plants is unconstitutional.

26        The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const.

27   amend. IV.  "[A] seizure of personal property [is] *per se* unreasonable within the meaning

28   of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued

upon probable cause . . . ." *United States v. Place*, 462 U.S. 696, 701 (1983).  However, a warrantless seizure of contraband can still be valid "if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present."  *Id.*

There are three exceptions to the warrant requirement that Defendants have raised in this case: exigent circumstances, consent, and open fields.  *See, e.g.*, *Oliver v. United States*, 466 U.S. 170, 178 (1984) (seizure of contraband in open field not unreasonable); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (consensual search not unreasonable); *Warden v. Hayden*, 387 U.S. 294, 298 (1963) (exigent circumstances justified warrantless search and seizure).  These exceptions to the warrant requirement are "narrow and their boundaries are rigorously guarded."  *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009) (internal quotation marks omitted).  For the reasons discussed below, none of these exceptions apply to the warrantless seizures in this case.

## A.  The exigent circumstances exception does not apply.

Defendants' primary argument is that exigent circumstances justified the search and seizure of Plaintiffs' marijuana plants.  Opp'n at 8-9.  It is well established that certain exigencies permit law enforcement officials to search and seize property without a warrant. *See, e.g.*, *Hayden*, 387 U.S. at 298.  However, the exigent circumstances exception only applies "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. . . . [That is,] there is compelling need for official action and no time to secure a warrant."  *Missouri v. McNeely*, 133 S.Ct. 1552, 1558-59 (2013) (internal quotations omitted).  "Exigent circumstances include those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1221 (9th Cir. 2014) (internal quotations omitted; ellipsis in original).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    While a state or local government has the authority to declare a certain activity to be

2 an "emergency" or a "nuisance," such declaration does not, by itself, justify a warrantless

3 search or seizure under the Fourth Amendment.  *See Sibron v. New York*, 392 U.S. 40, 61

4 (1968).  A state "may not . . . authorize police conduct which trenches upon Fourth

5 Amendment rights, regardless of the labels which it attaches to such conduct." *Id.*  "The

6 question . . . upon review of a state-approved search or seizure []is not whether the search

7 (or seizure) was authorized by state law. The question is rather whether the search was

8 reasonable under the Fourth Amendment." *Id.*  The same restrictions apply to local

9 government.

10    California state law is in accord with this federal constitutional requirement.  *Leppo*

11 *v. City of Petaluma*, 20 Cal. App. 3d 711, 718-19 (1971).  A local government typically

12 "has statutory power, vested in its governing body, to declare and abate public nuisances.

13 But neither at common law nor under such express power can it, by its mere declaration

14 that specified property is a nuisance, make it one when in fact it is not." *Id.* at 718

15 (quoting 14 A.L.R. 2d 82).  Even where a local government correctly identifies and

16 classifies a nuisance, summary abatement may only be used in narrow circumstances.

17 "[I]n emergency situations the city may act summarily to abate a nuisance, but in such case

18 the city must be prepared to establish by a preponderance of evidence that an emergency

19 actually existed." *Id.* at 719.

20    Here, Defendants make two arguments for why the exigent circumstances exception

21 should apply.  First, they point to the ongoing water crisis in California.  Opp'n at 8-9.

22 They argue that marijuana plants use a large amount of water (although they provide no

23 comparison to other agricultural or garden plants), so law enforcement is authorized to

24 enter private property to cut down such plants without a warrant.  Defendants note that, for

25 one reservoir in Lake County, the water is at 10% of capacity, putting it below the intake

26 pump so that the public cannot use the reservoir, and that the County has adopted Urgency

27 Conservation Ordinances. *Id.*  Even under these conditions, Defendants' argument is

28 unavailing.  The need to reduce water use, even during a drought, falls below the level of

United States District Court
Northern District of California

1    urgency associated with the emergencies justifying a warrantless search in existing case

2    law, such as the preservation of evidence, prevention of immediate physical harm, or

3    stopping the escape of a suspect.  Defendants could have easily obtained a warrant, or

4    followed the five-day waiting period required under the Ordinance's non-summary

5    abatement procedure, in order to stop the water usage here.  The Court is utterly

6    unpersuaded by Defendants' claim at oral argument that Lake County should not be

7    required to get a warrant for these abatement actions because it has not fully developed the

8    institutional process required to do so.  The County's inexperience in obtaining warrants

9    before conducting a search and seizure does not excuse the requirements of the United

10   States Constitution.  Moreover, Defendants explained that, even with their lack of

11   institutional capacity, it would take only about a day to obtain a warrant.  Defendants give

12   no reason for why they cannot wait one day to search the premises in these cases.

13        Defendants' second argument is that the Ordinance itself justifies the warrantless

14   search and seizure.  The Ordinance does declare that the violations at issue in this case

15   "constitute[] an immediate threat or danger to the health, safety and welfare of the public

16   and may, therefore, be summarily abated . . . ."  County of Lake Ordinance No. 2997

17   § 72.8.  But mere declaration of an immediate threat does not make it so.  *See Sibron*, 392

18   U.S. at 61.  Further, the other provisions of the Ordinance belie the claim that any outdoor

19   growth whatsoever constitutes an emergency.  For example, the Ordinance allows a private

20   resident to grow indoors as many plants as can fit in an area of 100 square feet.  Ordinance

21   No. 2997 § 72.6.  It also allows up to six mature plants or twelve immature plants outdoors

22   on parcels greater than one acre.  *Id.* § 72.5.  The County offers no explanation for why the

23   water use in these permissible situations is not problematic, but water used for any outdoor

24   growth on an acre or less is an "immediate threat" to public health and safety.  Similarly,

25   despite being asked by the Court during oral argument, Defendants are unable to explain

26   why the cultivation of seven mature plants constitutes a danger to public health and safety,

27   but the growth of six plants does not.  The apparent arbitrariness of the Ordinance's razor-

28   thin distinction between emergency violations and permissible growth delegitimizes the

Ordinance's summary abatement provision, and, consequently, Defendants' argument that the exigency exception applies.

**B.  Plaintiffs did not consent to these searches.**

Consent is a recognized exception to the Fourth Amendment protection against unreasonable search and seizure.  *United States v. Russell*, 664 F.3d 1279, 1281 (9th Cir. 2012).  However, the existence of consent to search "is not lightly inferred," and the government always has the burden of proving effective consent.  *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000).

At the hearing held on September 2, 2014, Defendants responded to Plaintiffs' allegations of unconstitutional search and seizure by claiming that Plaintiffs' had consented to these searches.  Sept. 2 Transcript at 11 (Docket No. 31).  In fact, Defendants submitted that they would provide proof of consent in this case by providing declarations "under penalty of perjury."  *Id.*  To date, they have provided no such evidence.

Despite Defendants' claims at the hearing, Plaintiffs have repeatedly asserted that they did not consent to Defendants' searches.  In fact, Plaintiffs' declarations indicate that four of the nine named Plaintiffs were not even home when the searches and seizures occurred, and Plaintiffs have provided a video of what appears to be law enforcement officers cutting a chain lock to enter private property.  Allen, Harris, Outhout and Warren Decls. (Docket Nos. 6, 9, 13, 17); Manually Filed Video (Docket No. 38-1).  Those Plaintiffs who were present during the searches argue that the show of force made during the raids renders any consent that Plaintiffs did provide involuntary.  Mot. at 11; *see also, e.g.*, Holt Decl. at 2; Outhout Decl. at 2.  Given that it is the government's burden to establish voluntary consent, the Court finds that this exception does not apply to the warrantless searches and seizures in this case.

//

//

//

United States District Court
Northern District of California

United States District Court
Northern District of California

**C. The open fields exception does not apply.**

Defendants have also raised the open fields exception as a defense. Opp'n at 8. In general, the police do not need a warrant to search the "open fields" of a private property, because an individual does not have a significant privacy interest in such open spaces. *Oliver v. United States*, 466 U.S. 170, 179 (1984). However, within the curtilage of a home, an individual's privacy interest is sufficient for Fourth Amendment protections to apply. *Id.* at 180; *United States v. Struckman*, 603 F.3d 731, 738 (9th Cir. 2010). Four factors determine the extent of the curtilage: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987); *Struckman*, 603 F.3d at 739 ("[A] small, enclosed yard adjacent to a home in a residential neighborhood—is unquestionably such a 'clearly marked' area 'to which the activity of home life extends,' and so is 'curtilage' subject to Fourth Amendment protection.").

Here, Plaintiffs' marijuana plants appear to have been within the curtilage of their homes, precluding application of the open fields doctrine. Each of the named Plaintiffs reside on properties that are one acre or smaller. Plaintiffs' Decls. The marijuana plants were generally between zero and thirty feet from the Plaintiffs' houses. *Id.* Each of the marijuana growing areas was surrounded by at least one fence, and often the entire property was also surrounded by a fence. *Id.* Although more facts may be necessary to conclude at trial that "the activity of home life extends" to these areas, the properties at issue are so small, and the plants so close to the houses, that it is likely that the areas are within the curtilage of Plaintiffs' homes. As a result, the Court determines that the open fields exception does not apply.

//

//

//

9

**D.  The Court is concerned that Plaintiffs fail to state a claim against the Individual Defendants, and constructs the Preliminary Injunction accordingly.**

Defendants raise legitimate concerns about the sufficiency of the factual allegations as they relate to some of the individual Defendants in this case.  *See* Opp'n at 5-6.  Specifically, the Court is concerned that the Complaint does not allege sufficient facts regarding the individual Defendants' specific involvement in the alleged constitutional violations.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege an actual connection between the actions of the named defendants and the alleged deprivations, either in the form of personal participation, vicarious liability (if permitted by state law), or by causing the deprivation by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).  Vague and conclusory allegations of an official's involvement in civil rights violations are insufficient.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Instead, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For multiple defendants, a complaint must set forth specific facts as to each defendant's role in the alleged violation.  *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

In the Complaint, Plaintiffs' factual allegations regarding the Individual Defendants are vague and conclusory.  The Complaint provides:

> Each of the defendants caused and is responsible for the below-described unlawful conduct and resulting injuries by, among other things: personally participating in the unlawful conduct or acting jointly or conspiring with others who did so by authorizing, acquiescing or setting in motion policies, plans or actions  that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; and by ratifying the unlawful conduct that occurred by agents and officers under their discretion and control, including failing to take remedial steps or disciplinary action.  In doing the acts alleged herein, defendants and each of them had a duty to protect the health and safety of the Plaintiff, and they failed to exercise due care in the enforcement of that duty.

Compl. ¶¶ 23-24.  These factual and causal allegations are insufficient.  Absent an amended Complaint, it is likely that the claims will be dismissed as they relate to these individual Defendants.  Consequently, Plaintiffs are presently unlikely to succeed against these individual Defendants, and a preliminary injunction is granted only against the County of Lake, its employees and agents, and those acting in concert with it.

**E.  Defendants' other arguments are not persuasive.**

Regarding the likelihood of success on the merits, Defendants make three additional arguments that fail to move the Court.  First, Defendants claim that Plaintiffs have not sufficiently alleged a privacy interest in these properties, and therefore lack standing, because Plaintiffs have only stated that they are "residents" of Lake County.  Opp'n at 4-5.  However, both the Complaint and Plaintiffs' Declarations repeatedly allege that these properties are Plaintiffs' "homes," which would clearly be within the Fourth Amendment's scope.  Amended Complaint ¶¶ 6-14; *see also, e.g.*, Allen Decl. at 2.  Additionally, Plaintiffs made clear at the October 6 hearing that all of the named Plaintiffs primarily reside at the properties at issue.  Such alleged residence is sufficient for standing to challenge a search under the Fourth Amendment.  *See, e.g.*, *Minnesota v. Olson*, 495 U.S. 91, 100 (1990).

Second, Defendants argue that Plaintiffs have failed to allege a sufficient property interest, either in ownership of the real properties that were searched, or in the medical marijuana plants themselves.  Opp'n at 5.  Again, this argument defies the most reasonable interpretation of the Complaint and Declarations.  Absent any evidence otherwise, it is reasonable to infer that medical marijuana patients who cultivate plants on land just outside their homes also own those plants.  The plants are therefore presumed to be Plaintiffs' personal property, to which both the Fourth and Fourteenth Amendments apply. *United States v. Place*, 462 U.S. 696, 701 (1983); *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012) (regarding homeless persons' unattended belongings, "this case concerns the most basic of property interests encompassed by the due process clause:

United States District Court
Northern District of California

1   Appellees' interest in the continued ownership of their personal possessions").

2       Third, Defendants argue that there is no municipal liability for Lake County here,

3   because Plaintiffs have not identified a "policy [that] amounts to deliberate indifference to

4   [a] plaintiff's constitutional rights." Opp'n at 6. However, Defendants are conflating two

5   separate theories of municipal liability. According to *Monell v. Dept. of Social Services*,

6   436 U.S. 658 (1978), a municipality can be liable under § 1983 where the allegedly

7   unconstitutional action implements an officially sanctioned policy, such as an ordinance.

8   *Id.* at 691. Alternatively, even where there is no such policy, a municipality can be liable

9   where its officers demonstrate "deliberate indifference" to plaintiffs' constitutional rights.

10  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). However, Defendants have

11  not identified any cases holding that, where there is an official policy at issue, that policy

12  itself must "amount to" deliberate indifference. Here, although there are questions about

13  whether all of the searches and seizures were conducted pursuant to Ordinance 2997, it is

14  clear that some of them were, since Summary Abatement notices were at least occasionally

15  left at Plaintiffs' residences. Because Plaintiffs have shown that Defendants were

16  implementing an official policy, Plaintiffs have sufficiently alleged a theory of municipal

17  liability.

18      Plaintiffs also raise claims related to due process, a conspiracy to violate civil

19  rights, and violations of the privacy protections of the California Constitution. However,

20  Plaintiffs have demonstrated a likelihood of success on their Fourth Amendment claim -

21  specifically, that Defendants conducted warrantless searches and seizures of Plaintiffs'

22  property, and no exception to the warrant requirement applies. Because such success is

23  alone sufficient for the preliminary injunctive relief sought, the Court does not now

24  address the merits of Plaintiffs' additional claims at this point.

25

26  **II. Prong Two: Plaintiffs Are Likely to Suffer Irreparable Harm Absent an**

27  **Injunction**

28      The second prong of the *Winter* test for a preliminary injunction is that the moving

1    party would likely suffer irreparable injury in the absence of an injunction.  Although there

2    was insufficient evidence to satisfy this factor at the TRO stage, Plaintiffs have provided

3    enough evidence to satisfy it now.

4         Under *Lyons*, plaintiffs seeking a preliminary injunction must use evidence to

5    demonstrate a likelihood that they will be injured again.  461 U.S. at 108-09.  There are

6    two ways a plaintiff can demonstrate such a likelihood: first, by identifying a written

7    policy that the injury "stems from," or second, by demonstrating that the injury was part of

8    a "pattern of officially sanctioned behavior."  *Melendres*, 695 F.3d at 997-98 (internal

9    quotations and ellipsis removed).

10        Previously, Plaintiffs argued that the mere loss of security following an

11   unconstitutional raid was an ongoing injury amenable to injunctive relief.  September 3,

12   2014 Supplemental Brief at 2 (Docket No. 24).  The Court rejected this argument, as *Lyons*

13   and its progeny clearly indicate that the mere loss of security following a constitutional

14   violation, without more, does not demonstrate a likelihood of future irreparable harm.

15   Order at 2-4.  Plaintiffs also argued that the threat of irreparable harm arose from the risk

16   that they would be raided again.  Sept. 3 Supplemental Brief at 2-4.  Because Plaintiffs put

17   forward no evidence showing why law enforcement officials were likely to return to a

18   previously abated Plaintiff within the same growing season, the Court rejected this

19   argument when ruling upon Plaintiffs' request for a TRO.  Order at 4-7.

20        Now, however, Plaintiffs have provided sufficient evidence to show that they are

21   likely to suffer injury from future raids within this growing season.  First, as already noted,

22   at least some of the injuries stem from the enforcement of Ordinance 2997, as indicated by

23   the Summary Abatement notices posted by law enforcement officials.  Second, Plaintiffs

24   have provided testimony in the form of a declaration from a similarly situated medical

25   marijuana patient whose property was seized by the Lake County Sheriff's Department in

26   July of 2013, March of 2014, and again in August of 2014 – three times in slightly over

27   one year.  Robinson Decl. at 1-2 (Docket No. 37).  The numerosity and repetitive nature of

28   these searches suggests a pattern or practice on the part of the County to conduct repeat

searches and seizures.  Also, Plaintiffs put forward evidence, in the form of a declaration from the Director of the California Chapter of NORML, that it is common for California's medical marijuana patients who have lost marijuana plants to secure new "starter" plants, which could be a target of additional law enforcement seizures this year.  Gieringer Supp. Decl. (Docket No. 36).  Further, Gieringer claims to have received numerous complaints from medical marijuana patients in the County of Lake about warrantless searches and seizures of their marijuana plants, as well as complaints from unabated patients in the County who fear seizure of their medical marijuana in the coming months.

In short, while Plaintiffs were denied a TRO based on their failure to adequately demonstrate a likelihood of irreparable injury absent the issuance of injunctive relief, they have successfully done so in the intervening weeks.

### III.  Prong Three: The Balance of Equities Favors Plaintiffs

District courts must "give serious consideration to the balance of equities and the public interest."  *Winter*, 555 U.S. at 9.  However, an injunction is a "matter of equitable discretion."  *Id.* at 32.  The appropriate analysis requires looking "to the possible harm that could befall the various parties."  *Maxim Integrated Products, Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1036 (N.D. Cal. 2009).

In this case, the balance of equities tips sharply in Plaintiffs' favor.  First, denying the preliminary injunction would leave numerous medical marijuana patients in Lake County vulnerable to future warrantless seizures of their medicine, which could lead to significant pain and suffering.  While it is true that these patients could secure medical marijuana elsewhere should they need it immediately, California law explicitly allows for cultivation, so that patients are not required to do so.  Cal. Health & Safety Code § 11362.77.  Second, the protection of constitutional rights is a strong equitable argument in favor of issuing the injunction.  Finally, the immediacy if the situation also weighs in favor of granting a preliminary injunction, as it is cultivation season for marijuana plants, and allowing further warrantless seizures in the near-term would likely have lasting

14

1  consequences for Plaintiffs' medical marijuana supplies.

2      The Court recognizes that several of the patients were apparently out of compliance

3  with the Ordinance.  However, this fact alone does not move the Court to deny the

4  injunction, given the equitable considerations discussed above.

5      The Court is not convinced by Defendants' argument that granting a preliminary

6  injunction poses potential harm to the general public.  Defendants point to concerns about

7  inordinate water usage, water pollution, and safety hazards resulting from the conditions of

8  cultivation used by alleged violators of the Ordinance.  Opp'n at 8-9.  At oral argument,

9  Defendants described "electricity shacks" and water system failures.  However, absent a

10 compelling argument to the contrary, there is little reason to believe that requiring a five-

11 day notice period, or the time it takes to obtain a warrant, before abating noncompliant

12 cultivation would exacerbate these harms to a level that outweighs the burden on Plaintiffs.

13 Further, the Court's narrow injunction allows for responses to true emergencies that are in

14 addition to mere violations of the Ordinance.  For example, in the ordinary case where

15 someone on .75 acres of land is cultivating marijuana, the County must obtain a warrant or

16 provide five-day's notice before entering the property and abating the plants.  However, if

17 that cultivation includes the use of a dangerous electricity rig that the County reasonably

18 believes could start a fire at any moment, and the County has knowledge of these

19 dangerous conditions without violating the Fourth Amendment rights of the property

20 owner, then the County can mediate the danger under the exigency exception to the

21 warrant requirement.  In other words, the Court prescribes injunctive relief that orders the

22 County to comport with constitutional requirements; it does not disable the County from

23 responding to real, supportable, reasonable threats to public safety.

24

25 **IV.  Prong Four: An Injunction is in the Public Interest**

26      The public interest is a largely neutral factor when weighed in this case.  On the one

27 hand, California residents who are authorized to use and cultivate medical marijuana under

28 the state's Compassionate Use Act have a strong interest in being protected from

United States District Court
Northern District of California

15

warrantless seizure of their medicine.  In the same vein, California has an interest in seeing that its laws are faithfully protected against municipal intrusion or overreach.  Conversely, residents of Lake County passed Ordinance No. 2997 by 51.6%, and therefore have an interest in the protection of local laws enacted through the democratic process.  Opp'n at 1.  Further, where the cultivation of marijuana plants does tax public utilities, endanger the water supply, attract crime, and cause a nuisance (be it from noise, smell, etc.) to neighbors, there is a public interest in favor of enforcing reasonable municipal nuisance ordinances.  Ultimately, however, the protection of constitutional rights and the guarantee of access to state-recognized medicine tilts the scales in favor of Plaintiffs.  Moreover, Plaintiffs' strong showing on the other elements required for a preliminary injunction compensates for the close nature of this specific element.

**CONCLUSION**

Plaintiffs have met their burden in showing the need for a preliminary injunction stopping the warrantless summary abatement actions against medical marijuana patients by the County of Lake, except in situations of true emergency, pending a full trial on the merits.  For this reason, the Court GRANTS Plaintiffs' request for a preliminary injunction.  IT IS HEREBY ORDERED that Defendant County of Lake, its officers, agents, and employees, and any other persons acting in active concert or participation therewith, are enjoined from enforcing Ordinance No. 2997 through warrantless searches or summary abatement actions without consent, unless doing so is necessary to prevent immediate physical harm to persons or property, the destruction of evidence for a criminal case, or the escape of a criminal suspect.

**IT IS SO ORDERED.**

Dated:   10/14/2014

_____
THELTON E. HENDERSON
United States District Judge

16