UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONA ALLEN, et al.,

            Plaintiffs,

      v.

COUNTY OF LAKE, et al.,

            Defendants.

Case No. 14-cv-03934-TEH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants County of Lake, Francisco Rivero, Chris Macedo, Richard Coel, Dennis Kiethly, Joe Dutra, Steve Herdt, Michael Lockett, and Frank Walsh (collectively "County Defendants"), as well as Loren Freeman, separately ("State Defendant") (collectively "Defendants"), have moved to dismiss the Second Amended Complaint of Plaintiffs Mona Allen, Paul Ray Harris, Shaun Jones, Scott Outhout, Elvin Sikes, Nina Faye Sikes, Nicole Van Schiack, Preston Warren, and the California Chapter of the National Organization for the Reform of Marijuana Laws (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket Nos. 70, 71).  Pursuant to Civil Local Rule 7-1(b), the Court finds these motions suitable for resolution without oral argument.  After carefully considering the arguments of the parties in the papers submitted, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss for the reasons set forth below.

**BACKGROUND**

On November 4, 1996, California voters passed Proposition 215, which is codified as the "Compassionate Use Act" at California Health & Safety Code section 11362.5, allowing "seriously ill" Californians to "obtain and use marijuana for medical purposes." Cal. Health & Safety Code § 11362.5(b)(1).  On September 10, 2003, the California Legislature enacted Senate Bill 420, allowing qualified patients and their primary

United States District Court
Northern District of California

1  caregivers to cultivate and possess sufficient quantities of marijuana as are reasonably

2  related to their personal medical needs.

3      In June of 2014, after a popular vote, the Lake County Board of Supervisors enacted

4  Lake County Ordinance No. 2997 ("Measure N" or "Ordinance"), which imposes a

5  number of restrictions on the cultivation of marijuana within the County based upon

6  factors including the size and location of the property, the size and number of marijuana

7  plants, and the use of locked gates controlling access to the plants.  Ordinance No. 2997

8  § 72.5(g).  The Ordinance further provides that "any violation of this ordinance shall

9  constitute a public nuisance and shall be subject to abatement as provided" by the

10 Ordinance.  *Id.* § 72.7(a).  The process for that abatement is described in sections 72.9 and

11 72.10, which provide notice and an opportunity to achieve compliance with the Ordinance

12 before any abatement action.  However, the Ordinance also allows the *summary abatement*

13 of marijuana cultivation that violates a limited number of specific provisions within the

14 Ordinance, declaring that such growth "constitutes an immediate threat or danger to the

15 health, safety and welfare of the public and may, therefore, be summarily abated in

16 accordance with Government Code Section 25845 . . . ."  *Id.* § 72.8.

17      The ten named individual Plaintiffs identify themselves as residents of Lake

18 County, California, and qualified medical marijuana patients that filed suit against

19 Defendants on August 29, 2014, alleging that their marijuana plants were summarily

20 abated by Defendants in accordance with the Ordinance but in violation of certain

21 constitutional and statutory rights.  The individual Plaintiffs are joined by the California

22 Chapter of the National Organization for the Reform of Marijuana Laws ("CA NORML"),

23 a non-profit corporation that advocates for the rights of adults to use medical marijuana.

24 Plaintiffs filed their First Amended Complaint on September 1, 2014, and sought a

25 temporary restraining order against Defendants, which was denied by the Court on

26 September 4, 2014.  (Docket No. 26).  Plaintiffs thereafter sought a preliminary injunction,

27 which was granted by the Court on October 14, 2014.  (Docket No. 59).  After seeking

28 leave to amend, Plaintiffs filed their Second Amended Complaint ("SAC") on December 1,

2014.  (Docket No. 69).  On December 18, 2014, County Defendants filed a motion to dismiss the SAC.  (Docket No. 70).  Defendant Freeman filed a separate motion to dismiss six days later.  (Docket No. 73).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where a plaintiff fails to state a claim upon which relief can be granted.  Dismissal for failure to state a claim is a question of law.  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995).  To survive a Rule 12(b)(6) motion, a plaintiff must make a "short and plain statement" providing "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 570 (2007) (quoting in part Rule 8(a)(2)).  The statement must include "enough factual matter (taken as true) to suggest" a right to relief that rises "above a speculative level."  *Id.* at 555-56.  Additionally, a motion to dismiss is appropriate where a plaintiff discloses some absolute defense or bar to recovery in their pleading.  *See* Fed. R. Civ. P. 12(b)(6); *Quiller v. Barclays American Credit Inc.*, 727 F.2d 1067, 1069 (5th Cir. 1984) ("The claim may be adequately stated, as it is here, but in addition to the claim the complaint may include matters of avoidance that preclude the pleader's ability to recover.").

In evaluating a motion to dismiss, a court must treat all factual allegations as true, and must construe them in a light most favorable to the plaintiff.  *Symington*, 51 F.3d at 1484.  However, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**DISCUSSION**

County Defendants allege thirteen arguments in their motion to dismiss.  Defendant Freeman reasserts one of these arguments and adds one additional argument for the Court's consideration.  The Court now addresses each of these arguments below.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.      Plaintiffs sufficiently allege standing.**

In their Reply, County Defendants withdrew their standing argument with the understanding that they may raise it at a later time.  Cnty. Defs.' Reply at 2 (Docket No. 86).  The Court has already rejected Defendants' standing argument, and will not repeat that analysis here.  *See* Oct. 14, 2014 Order at 11-12 (Docket No. 59).

**II.     Plaintiffs allege sufficient facts regarding the Individual Defendants' respective involvement.**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a connection between the actions of the named defendants and the alleged deprivations.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

This Court has previously expressed doubt about the sufficiency of the allegations against the individually named defendants.  *See* Oct. 14, 2014 Order at 10-11 (Docket No. 59).  However, Plaintiffs' SAC appropriately addressed these concerns by adding specific allegations regarding the roles of the individual defendants in causing the constitutional violations alleged.  *See* SAC ¶¶ 41-56.  Defendant Sheriff Rivero is alleged to have been active in drafting the Ordinance, and publicly stating that it would be a good tool for abating medical marijuana in the County.  *Id.* ¶¶ 42-43.  Defendant Rivero is also alleged to have appointed Defendant Macedo as the Undersheriff to the County on April 30, 2014, making him responsible for the day-to-day operations of the Sheriff's Department.  *Id.* ¶ 44.  Plaintiffs allege that Defendant Macedo was also present during at least one of the abatement actions.  *Id.* ¶ 54.  Defendant Coel is alleged to have drafted the Summary Abatement Notice form that was used to summarily abate the marijuana of "[a]ll, or nearly all of the plaintiffs[.]"  *Id.* ¶¶ 45-47.  These factual allegations constitute a viable claim that

4

Defendants Rivero and Coel participated in the creation of a policy that was implemented under the supervision of Defendant Macedo, resulting in the constitutional violations alleged in the SAC.

Additionally, the SAC alleges that Defendants Kiethly, Dutra, Herdt, and Freeman were "personally involved" in the abatement actions at issue, including actions on July 19 and August 1, 2014, involving the property of Plaintiffs Holt, Jones, Sikes, and Van Schiack. *Id.* ¶¶ 49-53. These allegations of affirmative acts and personal involvement decidedly satisfy the requirements of § 1983.

Further, despite the scant factual allegations against Defendant Lockett, namely that he was "present" at several of the abatement actions, *Id.* ¶ 25, it nonetheless is "plausible," within the context of the SAC as a whole, that a County employee who is present at an official action, undertaken in the remote locations here at issue, in fact held a participatory role in the activities alleged. Consequently, the allegations against Defendant Lockett narrowly survive the post-*Twombly* "plausible" pleading standard. *See Twombly*, 550 U.S. at 570.

Finally, the Court finds that the allegation that Defendant Walsh, a Deputy with the Lake County Sheriff's Office, "supervised and was present" at the abatement actions is sufficient. *Id.* at ¶ 26; *see Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (finding individual-capacity liability for supervisory role in constitutional deprivations).

For the foregoing reasons, Defendants' motion to dismiss the individual-capacity suits is DENIED.

## III.   Plaintiffs' official capacity suits are redundant, and are therefore dismissed.

Plaintiffs also bring suit against the named Defendants in their respective official capacities. SAC ¶¶ 18-26. Defendants are correct that a suit against an individual in their official capacity is effectively a suit against the public entity and not the named defendant. Cnty. Defs.' Mot. at 6 (citing *Kentucky, dba Bureau of State Police v. Graham*, 473 U.S. 159 (1985)). While a plaintiff is generally entitled to allege as many (even inconsistent)

claims as they desire, the functional equivalence of an official capacity and municipal action renders the official-capacity claims unnecessary, and allowing the official-capacity suits to proceed creates a risk of confusing the jury.  *See Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

Accordingly, Defendants' motion to dismiss the official-capacity suits against the County Defendants is GRANTED.  Because these claims cannot be cured by amendment under prevailing law, the official-capacity suits are DISMISSED WITH PREJUDICE.  However, the Court will allow the official-capacity suit against Defendant Freeman to proceed, as Plaintiffs seek injunctive relief, and because the State of California is not party to this suit.

## IV.    Plaintiffs' claim for a violation of due process is not barred.

Defendants contend that Plaintiffs' due process rights cannot be litigated in federal court because Plaintiffs have adequate opportunities for redress in the state court system.  Cnty. Defs.' Mot. at 6.  In support of this argument, Defendants cite *Parratt v. Taylor*, 451 U.S. 527 (1981).  The *Parratt-Hudson* doctrine, derived from the holdings in *Parratt* and *Hudson v. Palmer*, 468 U.S. 517 (1984), provides that there is no procedural due process violation where the deprivation was unforeseeable, random, and unauthorized, and where the state provides an adequate post-deprivation remedy.  The doctrine reasons that when the deprivation is the result of random and unauthorized actions by a state official, it is generally not possible for the state to provide pre-deprivation due process, so post-deprivation tort remedies are all the process that the state is required to provide.  *Zinermon v. Burch*, 494 U.S. 113, 128, 136 (1990); *Parratt*, 451 U.S. at 541.

However, Plaintiffs do not allege that their deprivation was unforeseeable, random, and unauthorized.  Just the opposite, it is Plaintiffs' contention that Defendants acted pursuant to an established policy of depriving Plaintiffs of their property without any pre-deprivation hearing.  As a result, the challenged conduct was authorized, the allegedly

erroneous deprivation was foreseeable, and a pre-deprivation process would have been practicable. *See Zinermon*, 494 U.S. at 128. Accordingly, the *Parratt-Hudson* doctrine does not bar Plaintiffs' claim at this stage of the proceedings, and the Court therefore does not need to consider the adequacy of post-deprivation state tort remedies.

Defendants' motion to dismiss Plaintiffs' due process claim is DENIED.

## V.   Plaintiffs sufficiently state a *Monell*-type claim.

In granting the preliminary injunction, this Court previously found that Plaintiffs sufficiently pled a *Monell*-type claim. Oct. 14, 2014 Order at 12. While Defendants contend that "Plaintiffs do not actually allege some express unconstitutional policy," Cnty. Defs.' Mot. at 7, the SAC identifies the allegedly unconstitutional policy of enforcement pursuant to the Ordinance, which includes search and seizure of property without a warrant, notice, or opportunity to be heard in violation of the Fourth and Fourteenth Amendments. *See* SAC ¶¶ 2, 57-58, 60-64.[1] Accordingly, Plaintiffs' SAC sufficiently states a claim under *Monell* and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).

Defendants' motion to dismiss Plaintiffs' municipal liability claim is therefore DENIED.

## VI.   Plaintiffs sufficiently state a claim for conspiracy under § 1983.

To allege a § 1983 conspiracy claim, a plaintiff must allege "which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of [the plaintiff's] constitutional rights." *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997). Merely conclusory allegations of conspiracy are insufficient to state a claim under § 1983. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). However, "a showing that the

---

[1] The SAC contains paragraphs numbered 60-64 on page 16, as well as paragraphs numbered 61-64 on page 17. The Court here cites to both sets of identically numbered paragraphs.

United States District Court
Northern District of California

alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement" may be sufficient. *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted). "A meeting of the minds can be inferred from circumstantial evidence . . . ." *Crowne v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). While the parties disagree whether a heightened pleading standard is required in this Circuit, the Court does not need to address that dispute here, as it finds that Plaintiffs meet even the heightened pleading standard demanded by Defendants.

Specifically, Plaintiffs allege the following: In May 2014, Defendant Rivero publicly announced that Measure N would "provide a good tool for the Lake County Sheriff's Office to eradicate medical marijuana cultivation in populated areas." SAC ¶ 43. On April 30, Defendant Rivero appointed Defendant Macedo to serve as acting Undersheriff for the County, giving him responsibility over "all duties and assignments," including sitting on boards, panels, and committees, and "perform[ing] the day-to-day operations of the Sheriff's Department." *Id.* ¶ 44. Defendant Coel, the Community Development Director, allegedly joined the growing conspiracy by developing a Summary Abatement Notice form that would be used by the Sheriff's Office, under the direction of Defendants Macedo and Rivero, to unconstitutionally raid Plaintiffs' properties. *Id.* ¶ 45. The remaining Defendants were allegedly either present (plausibly inferring involvement, given the context of the SAC and the nature of the abatement actions) or directly took part in the searches of Plaintiffs' properties and the eradication of their marijuana. *Id.* ¶¶ 48-56.

The Court finds that the factual allegations contained in the SAC are sufficient to infer a meeting of the minds and resulting conspiracy. *See Crowne*, 608 F.3d at 440. Accordingly, Defendants' motion to dismiss Plaintiffs' third and fourth causes of action for conspiracy under § 1983 is DENIED.

United States District Court
Northern District of California

1    **VII.    As the Court declines to dismiss most of Plaintiffs' federal claims, it retains**
2    **jurisdiction.**

3         Because the Court declines to dismiss most of Plaintiffs' federal claims, it properly
4    retains supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

5

6    **VIII.    Government Code section 815 does not bar Plaintiffs' common law claims.**

7         The County Defendants argue that Plaintiffs' fifth, sixth, ninth, and tenth causes of
8    action fail under California Government Code section 815.  That statute provides that,
9    "Except as otherwise provided by statute, (a) A public entity is not liable for an injury,
10   whether such injury arises out of an act or omission of the public entity or a public
11   employee or any other person."  Cal. Gov. Code § 815.  The County Defendants argue that
12   no other statute provides for the County's liability here.

13        However, Plaintiffs correctly argue that section 815.2 is just such a statute.  Section
14   815.2 states that "A public entity is liable for injury proximately caused by an act or
15   omission of the public entity within the scope of his employment if the act or omission
16   would, apart from this section, have given rise to a cause of action against that employee or
17   his personal representative."  *Id.* § 815.2(a).  In such cases, the public entity will be liable
18   unless the employee is immune from liability.  *Id.* § 815.2(b).  "Section 815.2 thus imposes
19   upon public entities vicarious liability for the tortious acts and omissions of their
20   employees, and makes it clear that in the absence of statute a public entity cannot be held
21   liable for an employee's act or omission where the employee himself or herself would be
22   immune."  *Becerra v. Cnty. of Santa Cruz*, 68 Cal. App. 4th 1450, 1461 (1998).

23        Here, section 815.2 imposes vicarious liability for the tortious acts of the County's
24   employees.  The County has not argued that any of its employees are immune from suit.
25   The County's motion to dismiss the fifth, sixth, ninth, and tenth causes of action on these
26   grounds is DENIED.

27

28

9

United States District Court
Northern District of California

**IX.     Plaintiffs' California constitutional claims for damages are dismissed.**

Both the County Defendants and Defendant Freeman argue that Plaintiffs' fifth and sixth causes of action, alleging violations of the California Constitution, should be dismissed because California state law does not permit freestanding causes of action for these violations.  The fifth cause of action alleges violations of Article 1, section 7 of the California Constitution, which prohibits the deprivation of property without due process.  The sixth cause of action alleges violations of Article 1, section 13, which protects the right to be secure against unreasonable searches and seizures.

California law does not recognize a cause of action for monetary damages for violations of Article 1, section 7 of the state Constitution.  *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 329 (2002).  Similarly, monetary damages are not recognized for violations of Article 1, section 13.  *Manning v. City of Rohnert Park*, No. 06-cv-3435-SBA, 2007 WL 1140434, at *1 (N.D. Cal. Apr. 17, 2007).

However, "it also is clear that, like many other constitutional provisions, this section [7] supports an action, brought by a private plaintiff against a proper defendant, for declaratory relief or for injunction."  *Katzberg*, 29 Cal. 4th at 307.

Because California law does not provide for damages for freestanding violations of these provisions of the California Constitution, Defendants' motions are GRANTED to the extent that Plaintiffs seek damages under these theories.  Because amendment would be futile under California law, these claims for damages are dismissed WITH PREJUDICE.  However, Plaintiffs' fifth and sixth causes of action may proceed to the extent that Plaintiffs seek injunctive or declaratory relief for these claims.

**X.     Plaintiffs sufficiently state a Bane Act claim.**

To state a claim under California's Bane Act, a plaintiff must allege that an individual "interfere[d] by threat, intimidation, or coercion, or attempt[ed] to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the

10

United States District Court
Northern District of California

1  rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1(a)-(b).

2  "[W]here a plaintiff's claims under the federal and state constitutions are co-extensive, the

3  discussion of a plaintiff's federal constitutional claim resolves both the federal and state

4  constitutional claims" under the Bane Act.  *Knapps v. City of Oakland*, 647 F. Supp. 2d

5  1129, 1168 (N.D. Cal. 2009) (citations omitted).

6      Here, Plaintiffs have sufficiently alleged § 1983 claims, as discussed above.  Their

7  Bane Act claims based on federal violations are sufficiently alleged for the same reasons.

8      Plaintiffs also allege Bane Act claims based on violations of the California

9  Constitution.  The County Defendants argue that violations of the California Constitution

10  are not actionable under the Bane Act where "the underlying rights cited do not provide

11  common-law or statutory causes of action for damages," citing *City of Simi Valley v.*

12  *Superior Ct.*, 111 Cal. App. 4th 1077, 1085 (2003).  That case is inapposite to the situation

13  here.  In *Simi Valley*, the plaintiffs, surviving family members of a man who committed

14  "suicide by cop," alleged a Bane Act violation for the police's refusal to let them speak to

15  the man during his standoff.  However, noting that the Bane Act "is simply not a wrongful

16  death provision," the court found that this allegation did not rise to the level of a

17  constitutional violation actionable under the Bane Act.  *Id.* (quotation omitted).  Moreover,

18  because the plaintiffs' remaining constitutional claims had been rejected for estoppel and

19  other reasons, there was nothing left to support a Bane Act claim.  *Id.*

20      Here, by contrast, plaintiffs have sufficiently alleged state constitutional violations

21  of their rights to due process and freedom from unreasonable searches and seizures.

22  Plaintiffs further allege that these violations were performed "under the threat of authority

23  by law enforcement," and that "defendants interfered with, and attempted to interfere by

24  threats, intimidation, and coercion, with plaintiffs peaceable exercise" of these rights.

25  SAC ¶ 95.  These allegations are sufficient to state a claim under the Bane Act.  *See*

26  *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 841-43 (2004).

27      The County Defendants motion to dismiss Plaintiffs' seventh cause of action is

28  DENIED.

United States District Court
Northern District of California

### XI.    Plaintiffs sufficiently state a Bane Act conspiracy.

The County Defendants also argue that Plaintiffs cannot allege a conspiracy to violate the Bane Act, because such a cause of action does not exist under California law. Their only support for this claim is a 1987 case regarding an individual's intentional interference with economic advantage, where it was said "there is no separate tort of civil conspiracy." *Youst v. Longo*, 43 Cal. 3d 64, 79 (1987).  However, courts have repeatedly recognized a cause of action for conspiracy to violate the Bane Act.  *Warner v. Cnty. of San Diego*, No. 10-cv-1057-BTM, 2011 WL 662993, *3 n.1 (S.D. Cal. Feb. 14, 2011) (citing cases).

As discussed above, Plaintiffs have sufficiently alleged a conspiracy to violate § 1983.  For the same reasons, Plaintiffs have sufficiently alleged a conspiracy to violate the Bane Act.  The County Defendants' motion to dismiss Plaintiffs' eighth cause of action is therefore DENIED.

### XII.    Plaintiffs sufficiently state a claim for conversion.

A cause of action for conversion must allege (1) Plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) Defendants' conversion by a wrongful act or disposition of Plaintiffs' rights; and (3) damages.  *Baldwin v. Marina City Props., Inc.*, 79 Cal. App. 3d 393, 410 (1978).

Defendants contend that Plaintiffs' vague and conclusory allegations regarding the wrongful taking of "Plaintiff's cars, trucks, trailers, tools and equipment" fail to state a claim for conversion.  Cnty. Defs.' Mot. at 13.  Such an allegation, however, does not appear in the SAC.  Instead, in their ninth cause of action, Plaintiffs allege: (1) "Plaintiffs legally owned and possessed the medical marijuana they were cultivating at their residence under California law"; (2) "On or about July 19 and August 1, 2014, defendants entered plaintiffs' property without a warrant or any advance notice and eradicated their property" without consent, right, or justification; and (3) "As a direct and proximate result of defendants' illegal conduct, plaintiffs suffered actual injuries and damages."  SAC ¶¶ 108-

1   113.  These allegations directly track the required elements for conversion identified by

2   Defendants' motion and enumerated above.

3          Accordingly, Defendants' motion to dismiss Plaintiffs' claim for conversion is

4   DENIED.

5

6   **XIII.    Plaintiffs sufficiently state a claim for trespass.**

7          Defendants identify the elements for trespass as: "(1) plaintiff owned, leased,

8   occupied, or controlled the property; (2) Defendant intentionally, recklessly, or negligently

9   entered Plaintiffs' property; (3) Defendant lacked permission for entry or Defendant

10  exceeded the scope of such permission; (4) plaintiff was actually harmed; and (5)

11  Defendant's entry was a substantial factor in causing Plaintiff's harm."  Cnty. Defs.' Mot.

12  at 13-14 (citing CALJIC 2000 (Fall 2011)).

13         Defendants allege that Plaintiffs insufficiently state a claim for trespass where they

14  vaguely allege that they occupied "homes," but do not identify specific property.  For

15  support, they cite to *Mann v. Superior Court*, 3 Cal.3d 1, 11 (1997), which discussed "the

16  nature of the physical surroundings and the degree to which those surroundings made it

17  clear the areas where the police trespassed were indeed private."  Cnty. Defs.' Mot. at 14.

18  However, *Mann* dealt with a motion to suppress evidence in a criminal case, not the

19  application of Rule 12(b)(6) in a trespass suit; it is clearly inapposite.

20         The legal requirement to withstand a motion to dismiss is clear: Plaintiffs need not

21  meet some "heightened fact pleading of specifics, but only enough facts to state a claim to

22  relief that is plausible on its face."  *Twombly*, 550 U.S. at 547.  It is, therefore, enough that

23  Plaintiffs allege legal possession to particular pieces of property upon which Defendants'

24  entry was not authorized, resulting in actual injuries and damage, including the destruction

25  of marijuana plants.  SAC ¶¶ 117-118.  The details of these allegations, including the

26  specific owners of each piece of property, the individual Defendants that entered

27  thereupon, and the dates and intentionality of that entry pursuant to a policy of

28

United States District Court
Northern District of California

13

1    enforcement for the Ordinance, are provided in paragraphs 1 through 122 of the SAC,

2    which are incorporated by reference in Plaintiffs' tenth cause of action.  *Id.* ¶ 116.

3              Finally, the Court is unpersuaded by Defendants' citation to *Uptown Enter. v.*

4    *Strand*, 195 Cal. App. 2d 45, 52 (1961), for the proposition that "the entry of a law

5    enforcement officer upon the land of another in the lawful discharge of his duties" is not an

6    act of trespass.  Cnty. Defs.' Mot. at 13.  Authorization pursuant to a warrant or exigent

7    circumstance might present a viable defense to Plaintiffs' claim for trespass.  However,

8    nothing in the SAC, and nothing thus far presented to the Court, discloses some absolute

9    defense or bar to recovery on these grounds.  Plaintiffs allege that Defendants lacked

10   warrants, consent, or exigent circumstance to enter their properties.  If Defendants have

11   evidence to the contrary, then they should present that evidence at later stages of these

12   proceedings.

13             Defendants' motion to dismiss Plaintiffs' claim for trespass is DENIED.

14

15   **XIV.    Plaintiffs may allege both Fourth and Fourteenth Amendment claims.**

16             Finally, Defendant Freeman separately argues that Plaintiffs' claims based on

17   Fourteenth Amendment violations must be dismissed, because the Fourth Amendment

18   "provides the explicit textual source and applicable constitutional protection for evaluation

19   in this lawsuit."  State Def.'s Mot. at 4 (citing *Albright v. Oliver*, 510 U.S. 266, 273

20   (1994)).  Defendant Freeman argues that the Fourth Amendment exclusively controls the

21   destruction of property incident to a search or seizure, citing *United States v. Ramirez*, 523

22   U.S. 65, 71 (1998).

23             Defendant Freeman is correct that, under *Albright*, a plaintiff's claim for a

24   *substantive* due process violation may be rejected where a more specific constitutional

25   provision applies.  510 U.S. at 273.  However, this does not preclude a plaintiff from

26   bringing both *procedural* due process claims and Fourth Amendment search and seizure

27   claims.  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993) ("The

28   proper question is not which Amendment controls but whether either Amendment is

United States District Court
Northern District of California

1   violated."); *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 70 (1992) ("Certain wrongs affect more

2   than a single right and, accordingly, can implicate more than one of the Constitution's

3   commands."); *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012).

4       The *Ramirez* decision on which Defendant Freeman relies merely stands for the

5   proposition that destructions of property incident to a search or seizure may fall within the

6   scope of the Fourth Amendment.  523 U.S. at 71.  Nothing in that case suggested that the

7   Fourth Amendment excluded the procedural due process protections of the Fourteenth

8   Amendment.  *See id.*

9       Defendant Freeman's motion to dismiss Plaintiffs' second and fourth causes of

10  action is therefore DENIED.

11

12  **CONCLUSION**

13      For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN

14  PART AND DENIED IN PART.  The Court DISMISSES WITH PREJUDICE Plaintiffs'

15  official-capacity suits against the Individual County Defendants.  The Court additionally

16  DISMISSES WITH PREJUDICE Plaintiffs' claims for monetary damages for direct

17  violations of the California Constitution.

18

19  **IT IS SO ORDERED.**

20

21  Dated:   02/02/15

22                                              THELTON E. HENDERSON
                                                United States District Judge
23

24

25

26

27

28