UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONA ALLEN, et al.,

    Plaintiffs,

v.

COUNTY OF LAKE, et al.,

    Defendants.

Case No. 14-cv-03934-TEH

**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. BACKGROUND**

On November, 4, 1996, California voters passed Proposition 215, which is codified as the "Compassionate Use Act" at California Health & Safety Code section 11362.5, allowing "seriously ill" Californians to "obtain and use marijuana for medical purposes." Cal. Health & Safety Code § 11362.5(b)(1). On September 10, 2003, the California Legislature enacted Senate Bill 420, allowing qualified patients and their primary caregivers to cultivate and possess sufficient quantities of marijuana as are reasonably related to their personal medical needs.

On June 11, 2014, after a popular vote, the Lake County Board of Supervisors enacted Lake County Ordinance No. 2997 ("Ordinance N" or "Ordinance"), which imposed several restrictions on the cultivation of marijuana within Lake County. ECF No. 189, at 13:18–19. The ordinance was passed "in order to protect Lake County's unique and sensitive environment, and to preserve the public peace, health, safety and general welfare of the citizens of, and visitors to the County." Ordinance § 72.2 (ECF No. 69-1). Among other things, the Ordinance prohibited any outdoor growth on parcels of one acre or less and growing more than six mature or twelve immature plants on parcels greater than one acre located outside of a Community Growth Boundary (except for qualifying marijuana collectives). *Id.* § 72.5. The Ordinance also provides that any violation of the

Ordinance "shall constitute a public nuisance and shall be subject to abatement as provided" by the Ordinance. *Id.* § 72.7(a). The Ordinance requires that the property owner or occupants be provided notice of the abatement and given a five-business-day period to either comply with the Ordinance or to request a hearing before any abatement action is taken by the County. *Id.* §§ 72.9–72.10. However, the Ordinance also allows the summary abatement of marijuana cultivation that violates a limited number of specific provisions within the Ordinance, declaring that such growth "constitutes an immediate threat or danger to the health, safety and welfare of the public and may, therefore, be summarily abated in accordance with [California] Government Code Section 25845 . . . ." *Id.* § 72.8.

The ten named individual Plaintiffs identify themselves as residents of Lake County, California, and qualified medical marijuana patients. ECF Nos. 6, 9, 10, 14-17, 180-2, 180-4, 180-7. The Plaintiffs filed suit against Defendants Lake County, Richard Coel, Michael Lockett, Francisco Rivero, Chris Macedo, Dennis Kiethly, Joe Dutra, Steve Herdt, and Frank Walsh on August 29, 2014[1], alleging that the Defendants conspired to summarily abate Plaintiffs' marijuana plants in accordance with the Ordinance but in violation of certain constitutional and statutory rights. *See* TAC (ECF No. 111). Plaintiffs allege, and the Defendants do not deny[2], that these summary abatements were conducted in August 2014 without warrants. ECF No. 190-1, at 7:16. Plaintiffs have each alleged ten claims for relief against each Defendant: (1) §1983 violation of Fourth Amendment Rights; (2) § 1983 violation of Fourteenth Amendment Rights; (3) § 1983 Conspiracy to Violate Fourth Amendment Rights; (4) § 1983 Conspiracy to Violate Fourteenth Amendment Rights; (5) Violation of California Constitution article 1, section 7; (6) Violation of California Constitution article 1, section 13; (7) Violation of California Civil Code § 52.1;

---

[1] Plaintiffs also filed suit against Loren Freeman, a Warden of California's Fish and Wildlife agency. Third Amended Complaint ("TAC") ¶ 20 (ECF No. 111). But Freeman has settled with the Plaintiffs. ECF No. 211.
[2] Defendants conceded this point during oral argument.

1  (8) Conspiracy to Violate California Civil Code § 52.1 ("Bane Act"); (9) Conversion under
2  California law; (10) Trespass under California law. TAC ¶¶ 61–121.
3      Presently before the Court are two motions: Defendants Lake County, Richard
4  Coel, Michael Lockett, Francisco Rivero, Chris Macedo, Dennis Kiethly, Joe Dutra, Steve
5  Herdt, and Frank Walsh's motion for summary judgment on all claims against Defendants
6  (ECF No. 186[3]); and Plaintiffs Carl Harris and Scott Oathout's motion for partial summary
7  judgment against Defendants Lake County, Steve Herdt, and Dennis Kiethly on claims
8  one, two, five, six, and seven (ECF No. 188[4]). The Court heard oral arguments on the
9  motions on January 18, 2017. After carefully considering the parties' written and oral
10 arguments, the Court DENIES Plaintiffs' motion, and GRANTS IN PART and DENIES
11 IN PART Defendants' motion for the reasons set forth below.

## II. LEGAL STANDARD

    Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

    A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings or materials in the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find

---

[3] Although the County's original motion for summary judgment was filed as ECF No. 186. All references to Defendant's motion for summary judgment are to this corrected version. ECF No. 189.
[4] "In the interest of eliminating superfluous material," Plaintiffs moved to file a corrected motion for summary judgment (ECF No. 190) which the Court granted (ECF No. 193). All references to Plaintiffs' motion for summary judgment are to this corrected motion.

United States District Court
Northern District of California

1  other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984
2  (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof
3  at trial, the moving party can prevail merely by "pointing out to the district court . . . that
4  there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S.
5  at 325. If the moving party meets its initial burden, the opposing party must then set out
6  specific facts showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at
7  250.

## III. DISCUSSION

### 1. Summary Judgment is Granted in Favor of All Defendants on Claims Two (§ 1983 Violation of Fourteenth Amendment Rights) and Four (Conspiracy to violate Fourteenth Amendment Rights)

Plaintiffs allege a § 1983 violation against all Defendants, asserting that Defendants violated Plaintiffs' Fourteenth Amendment Due Process rights when they deprived Plaintiffs of their medical marijuana. ECF No. 190-1, at 15–20; TAC ¶¶ 66-69. "Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005) (internal quotation marks and citation omitted).

At issue is whether the Plaintiffs had a property interest in their medical marijuana that is recognized by the Fourteenth Amendment. *See* ECF No. 189, at 19:3–21:3; ECF No. 190-1, at 16. This question has already been addressed by several district courts in California, all of which have decided there is no protected property interest in medical marijuana for purposes of the Fourteenth Amendment. *See, e.g., Little v. Gore*, 148 F. Supp. 3d 936, 955 (S.D. Cal. 2015) ("With respect to medical marijuana, although California state law may create a property interest in the marijuana, California district courts have found there is no protected property interest for purposes of the Fourteenth Amendment."); *Barrios v. Cty. of Tulare*, No. 1:13-cv-1665 AWI GSA, 2014 WL

2174746, at *5 (E.D. Cal. May 23, 2014) ("Because marijuana is contraband under federal law, Barrios had no property interest in the marijuana that was protected by the Fourteenth Amendment due process clause."); *Staffin v. Cty. of Shasta*, No. 2:13-cv-00315 JAM-CMK, 2013 WL 1896812 at *4 (E.D. Cal. May 6, 2013) (same). This Court agrees. Thus, Plaintiffs' due process claims under the Fourteenth Amendment fail as a matter of law.

Because Plaintiffs' due process claim fails, their fourth claim (conspiracy to violate the Fourteenth Amendment) also fails as a matter of law. *See Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (upholding dismissal of conspiracy claim where the underlying constitutional claim was denied); *Tuvalu v. Woodford,* 389 F. App'x 735, 735 (9th Cir. 2010) (same). Additionally, Plaintiffs' fourth claim fails because they failed to put forth any evidence supporting a conspiracy claim. *See infra* Section III.2. Accordingly, summary judgment is GRANTED in favor of all Defendants on claims two and four.

### 2. Summary Judgment is Granted in Favor of All Defendants on Claims Three (Conspiracy to Violate Fourth Amendment Rights) and Eight (Conspiracy to violate Bane Act)

In order to succeed on a conspiracy claim, Plaintiffs must prove that the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) (citation omitted). While each participant need not know the exact details of the plan, each participant must at least share the common objective of the conspiracy. *Id.* Moreover, "a defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." *Id.*

The Defendants seek summary judgment on Plaintiffs' third and eighth claims arguing that Plaintiffs have not proffered any evidence showing evidence of an agreement or meeting of the minds to violate Plaintiffs' constitutional rights. ECF No. 200, at 13:4–9. In response, Plaintiffs allege the "specific roles" of the individual defendants in an alleged conspiracy to violate Plaintiffs' constitutional rights. ECF No. 196, at 13–14. Notably, however, Plaintiffs' factual allegations do not cite anything other than their

Second Amended Complaint. *See id.* It is well established that to avoid summary judgment, a plaintiff cannot rely solely on allegations in a complaint, rather the party must present some "significant probative evidence tending to support the complaint." *Franklin v. Murphy*, 745 F.3d 1221, 1235 (9th Cir. 1984) (citations omitted); *see also Githere v. Consolidated Amusement Corp. Inc.*, 258 Fed. App'x 122, 124 (9th Cir. 2007) (relying on bare allegations in complaint is insufficient to defeat a motion for summary judgment). Consequently, Plaintiffs have failed to present the Court with evidence sufficient to create a genuine dispute.[5] Accordingly, the Court GRANTS summary judgment for all Defendants on claims three and eight.

### 3. Summary Judgment is Granted in Favor of All Defendants on Claim Seven (Violation of Bane Act)

California Civil Code § 52.1 ("Bane Act") authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 332 (1998). In order to prevail on a Bane Act violation, the Plaintiffs must show that (1) Defendants interfered with their constitutional or statutory rights; and (2) that the interference was accompanied by actual or attempted threats, intimidation, or coercion. *Lawman v. City and Cty of San Francisco*, 159 F. Supp. 3d 1130, 1151 (N.D. Cal. 2016).

The parties argue whether Plaintiffs are required to show that Defendants engaged in threats, intimidation, or coercion separate and apart from the alleged unlawful entry and abatement to support a Bane Act claim. *See* ECF No. 190-1, at 21–22; ECF No. 189, at 29–30. While neither party cited to the case in their briefing, the Ninth Circuit addressed

---

[5] A district court has no independent duty "to scour the record in search of a genuine issue of triable fact" and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); see also *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found.").

this issue in *Lyall v. City of L.A.*, 807 F.3d 1178 (9th Cir. 2015). There the court was addressing a Bane Act claim in the context of a § 1983 case involving the Los Angeles Police Department's warrantless entry and pat-down search of attendees at a private fundraising event. *Id.* at 1181–84. The trial court had issued an instruction on the plaintiff's Bane Act claim requiring that the Police threats, intimidation, or coercion be independent from the acts inherent in the detention and search. *Id.* at 1195. The *Lyall* court upheld the jury instruction stating, "[n]umerous California decisions make clear that a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act." *Id.* at 1196 (collecting cases). Therefore, because Plaintiffs base their Bane Act claims entirely on the unconstitutional search and seizure violations, *see* ECF No. 196, at 16, they have failed to provide evidence of independent threats, intimidation, or coercion that give rise to a Bane Act claim against any Defendant. Accordingly, summary judgment is GRANTED in favor of all Defendants on claim seven.

### 4. Summary Judgment is Granted in Favor of Coel, Rivero, and Macedo on All Claims

Defendant Coel was the Community Development Coordinator for Lake County and the policymaker for the Community Development Department during the alleged incidents. ECF No. 186-3, at 20:13–23, 21:18–21. He designed two forms using exact language from Ordinance N – one for summary abatement and one for abatement with a five-day notice – to be used in the enforcement of the Ordinance. *Id.* at 26. But he states he did not take a position on when either form was to be used nor did the forms provide guidance on how abatements were to be conducted. *Id.* at 31:5–15, 39:18–40:13. Coel also states he did not participate in any summary abatements. *Id.* at 36:9–19, 37:13–18.

Defendant Rivero was the Sherriff of Lake County during the alleged incidents. *Id.* at 119:3–14. He states he did not directly supervise sheriff deputies in searches and seizures nor did he review enforcements of Ordinance N. *Id.* at 121:16–21. Rivero does not recall participating in any Ordinance N enforcements, *id.* at 122:17–25, and he stated it

7

was not his intention to use Ordinance N to eradicate medical marijuana in residential neighborhoods. *Id.* at 123:16–21.

Defendant Macedo was the interim Undersherriff of the Lake County Sheriff's Department during the alleged incidents. *Id.* at 87:25–88:1. Macedo did not have final policymaking authority in this position, *id.* at 89:3–10. Further, Macedo states he was not present for any summary abatements, *id.* at 90:7–12; he did not help draft Measure N, *id.* at 90:12–15; he did not directly supervise Sergeant Herdt, *id.* at 91:7–9; and he did not review abatement reports as the enforcements were occurring, *id.* at 92:24–93:2.

Defendants move for summary judgment on all claims against Coel, Rivero, and Macedo alleging Plaintiffs "cannot establish [Coel, Rivero, and Macedo] subjected any Plaintiff to a violation of the Fourth or Fourteenth Amendment." ECF No. 189, at 13:18–27. Although, Plaintiffs cite their second amended complaint in support of their claims against Defendants, *see e.g.*, ECF No. 196, at 11:9–17, 13:12–14:2, such evidence is insufficient to create a genuine dispute at the summary judgment stage. *See supra* Section III.2 and n. 5. Moreover, Defendant has submitted evidence showing these three Defendants did not participate in any summary abatements. ECF No. 186-3, at 37:13–18 (Coel); *id.* at 122:17–25 (Rivero); *id.* at 90:7–12 (Macedo). Accordingly, summary judgment is GRANTED on all claims in favor of Coel, Rivero, and Macedo.

**5. Summary Judgment is Granted in Favor of Lockett on All Claims**

Lockett was the Chief Building Official of Lake County during the alleged summary abatements. ECF No. 186-3, at 67:7–21. While Lockett admitted helping county officers chop down some marijuana plants, *id.* at 69:2–9, Lockett also testified he only participated in chopping down marijuana plants upon invitations from Sergeant Herdt of the Lake County Narcotics Task Force. ECF No. 186-3, at 72: 13–25.

Defendants argue *Motley v. Park,* 432 F.3d 1072, 1082 (9th Cir. 2005) *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) entitles Lockett to summary judgment on all claims because "it is undisputed that Defendant Lockett unequivocally stated he only provided labor, relying on whether entry or abatement was

8

1   appropriate based on others' determinations for any property at issue." ECF 189, at 25:1–
2   11.  Plaintiffs failed to respond to this issue.

In *Motley*, the Ninth Circuit recognized that because "effective and efficient law enforcement requires cooperation and division of labor to function," lead officers are responsible for ensuring they have lawful authority for actions, while line officers "are required to do much less." *Motley*, 432 F.3d at 1081.  The court went on to hold that "[w]here an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied to by other officers turns out to be erroneous." *Id.* at 1082.  The Court agrees with Defendants that *Motley* applies here.  If a law enforcement officer, who is trained on warrant requirements, can rely on a lead officer's determination of lawful authority, then a non-law enforcement county official, who is not similarly trained on warrant requirements, must certainly be able to rely on the same information.  Accordingly, Defendant's motion for summary judgment is GRANTED as to all claims against Lockett.

## 6. Summary Judgment is Denied as to Claims Five (Violation of California Constitution art. I, § 7) , Six (Violation of California Constitution Art. I, § 13), Nine (Conversion), and Ten (Trespassing)

Defendants also seek summary judgment on claims five, six, nine, and ten alleging "there are no property rights under federal law for purposes of the Due Process Clause" and there is no authority "that allows a claim to proceed where the underlying claim violates federal law."  ECF No. 189, at 19:11–13.  In support of this argument, Defendants cite *Gonzalez v. Raich*, 545 U.S. 1, 27 (2005), where the Supreme Court recognized "marijuana [is] contraband for *any* purpose . . . ." (emphasis in original).  Additionally, Defendants cite several district court cases where courts have refused to recognize a property interest in medical marijuana for purposes of the Fourteenth Amendment. *E.g., Schmidt v. Cty. of Nev.*, No. 2:10-cv-3022 FCD/EFB, 2011 WL 2967786 (E.D. Cal. July 19, 2011); *Mazin v. True*, No. 1:14-cv-00654-REB-CBS, 2015 WL 1228321 (D. Colo. Mar. 16, 2015) .  Notably, however, none of these cases stand for the proposition that there

9

is no property interest in marijuana under California law or that federal courts cannot recognize such an interest. Rather these cases have only determined there is no property right in medical marijuana that is *recognized by the Fourteenth Amendment*. More significantly, two of these cases expressly recognize the possibility that property rights may exist under California law. *See Little*, 148 F. Supp. 3d at 955 ("California state law may create a property interest in the [medical] marijuana"); *Barrios*, 2014 WL 2174746, at *5 ("California may provide [a defendant] with the right to possess medical marijuana").

Plaintiffs, on the other hand, cite two California appellate cases which have recognized a property interest in marijuana under California law. In *City of Garden Grove v. Superior Court*, 157 Cal. App. 4th 355, 180 (2007), the court recognized a property interest in medical marijuana if possession of the medical marijuana is lawful under California law. *Id.* at 380. This holding was affirmed in *Cty. of Butte v. Superior Court*, 175 Cal. App. 4th 729, 737 (2009). Also, the Supreme Court of California has recognized that "[a]s a result of the enactment of [the CUA], the possession and cultivation of marijuana is no more criminal – so long as its conditions are satisfied – than the possession and acquisition of any prescription drug with a physician's prescription." *People v. Mower*, 28 Cal. 4th 457, 482 (2002).

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state . . . ." *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n. 2 (9th Cir. 2000). Thus, while the Fourteenth Amendment of the federal Constitution may not recognize a property interest in medical marijuana, this does not preclude California from recognizing the property right under its own constitution. *People v. Pettingill*, 21 Cal. 3d 231, 247 (1978) ("The construction of a provision of the California Constitution remains a matter of California law regardless of the narrower manner in which decisions of the United States Supreme Court may interpret provisions of the federal Constitution."); *see also United States v. Hammad*, 846 F.2 854, 859 (2d Cir. 1988) ("[T]he Constitution prescribes the floor below which protections may not fall, rather than a ceiling beyond which they may not rise."). Nor does it prevent this Court from enforcing

10

such state-based property interests under state law. Accordingly, applying California law, this Court holds Plaintiffs had a property interest in their medical marijuana[6] and summary judgment is DENIED as to claims five, six, nine, and ten.

### 7. Lake County's Liability

#### a. Summary Judgment is Denied on Claim One (§ 1983 Violation of Fourth Amendment)

A municipality cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978). "Liability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made but its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694). A plaintiff can prove a policy or custom of a municipality by showing: (1) a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks omitted). Absent a formal governmental policy, Plaintiffs must demonstrate an existence of a "longstanding practice or custom" so "persistent and

---

[6] Defendants also argue Plaintiffs' own statements that they were in lawful possession of medical marijuana are not admissible evidence of lawful possession according to *Littlefield v. Cty. of Humboldt*, 218 Cal. App. 4th 243, 256–57. See ECF No. 200, at 9:1–13; ECF No. 198, at 6:6–17. However, *Littlefield* is easily distinguishable on its facts. At issue in *Littlefield* was whether the amount of marijuana that the plaintiffs possessed were "reasonably related to the patients current medical needs." *Id.* at 256. While the plaintiffs in that case submitted expert testimony on their medical marijuana needs, the court rejected it because the court found the plaintiffs' expert was "not qualified to give an expert opinion as to plaintiffs' medical conditions and medical needs." *Id.* Here, in contrast, because the amount of Plaintiffs' medical marijuana needs are not at issue in this case, Plaintiffs' failure to submit expert testimony on their lawful possession is not required. In sum, *Littlefield* is inapposite.

11

1  widespread" that it constitutes a "permanent and well settled city policy." *Trevino v.*
2  *Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Improper custom cannot be based on "isolated or
3  sporadic incidents" but must be "founded upon practices of sufficient duration, frequency
4  and consistency that the conduct has become a traditional method of carrying out policy."
5  *Id.*

6  Here, both parties agree Ordinance N was not facially unconstitutional because "the
7  ordinance itself does not state how the enforcement is to be executed," ECF No. 189, at
8  22–24, and because it does not expressly "provide[] for the warrantless searches and
9  seizures at issue." ECF No. 196, at 8:13–14.[7] At the same time, Plaintiffs claim *Monell*
10 liability can be established through "reliance on an ordinance,"[8] and cites evidence in the
11 record where Defendants have stated they summarily abated marijuana under the
12 Ordinance. ECF 196, at 8. Yet, in admitting that the summary abatements were conducted
13 under Ordinance N, Defendants have not admitting to any wrongdoing or to establishing
14 any custom. Indeed, the Ordinance itself is silent as to whether a warrant is needed or not,
15 or which method to use, and the Ordinance allows for summary abatements "in accordance
16 with [California] Government Code § 25845.[9] The real issue here is whether the
17 Ordinance allowed for *warrantless* summary abatements, which both parties agree it did
18 not. ECF No. 196, at 8:13–25; ECF No. 200, at 10:4–24.

19 Thus, to establish *Monell* liability, Plaintiffs must put forth evidence of the
20 existence of a custom. *Trevino*, 99 F.3d at 918. "Normally, the question of whether a

---

[7] While Plaintiffs argued during oral arguments that they were also challenging the Ordinance on its face, Plaintiffs' counsel failed to articulate how the Ordinance was facially unconstitutional. Moreover, Plaintiffs conceded the ordinance was facially constitutional in their brief. *See* ECF No. 196, at 8:13–16.
[8] Plaintiffs' "reliance-on-an-ordinance" theory of *Monell* liability was presented without citing any case law, *see* ECF No. 196, at 8:13–25, nor could the Court find any legal authority to support it. To the extent Plaintiffs relied on the Court's language in its February 2, 2015 Order, ECF No. 93, where the Court refused to dismiss Plaintiffs' *Monell* claim because "the SAC identifie[d] the allegedly unconstitutional policy of enforcement pursuant to the Ordinance," *Id.* at 7:11–14, the Court was referring to the "longstanding custom" prong identified in *Menotti*, 409 F.3d at 1147 and the "deliberate indifference" prong identified in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989).
[9] Cal. Gov't Code §25845 (a) (West 2016) expressly permits the summary abatements of nuisances where the nuisance constitutes an immediate threat to public health or safety.

1    policy or custom exists would be a jury question. However, when there are no genuine
2    issues of material fact and the plaintiff has failed to establish a prima facie case,
3    disposition by summary judgment is appropriate." *Trevino*, 99 F.3d at 920. Defendants
4    argue that "[b]y sheer virtue of the minimal time (a few weeks) that passed between the
5    Ordinance's coming into being and these enforcements, it defies logic that such a custom
6    could have arisen." ECF No. 200, at 11:9–11. The Court is unconvinced by Defendants'
7    argument. While the duration of the alleged violations spanned approximately three
8    weeks[10], *Trevino* requires that custom "not be predicated on isolated or sporadic
9    incidents." *Trevino*, 99 F.3d at 918. Three weeks may very well constitute sufficient
10   duration to establish municipal custom if the frequency and consistency of the municipal
11   acts establish a "standard operation procedure." Furthermore, Defendants have not
12   produced any evidence suggesting that any other summary abatements were conducted in a
13   lawful manner or that warrantless abatements were sporadic or isolated. Viewing the
14   evidence in the light most favorable to the Plaintiffs, a reasonable jury could find the
15   County had a custom of performing warrantless summary abatements.
16        At the same time, Plaintiffs' own motion for summary judgment fails to even
17   mention *Monell*. Accordingly, Plaintiffs' and Defendants' motions for summary judgment
18   on claim one as to Lake County are DENIED.

### b. Plaintiffs' Motion for Summary Judgment Against Lake County on Claims Five (Violation of California Constitution art. I, § 7) and Six (Violation of California Constitution art. I, § 13) is Denied.

22   "California . . . has rejected the *Monell* rule and imposes liability on counties under
23   the doctrine of respondeat superior for acts of county employees; it grants immunity to
24   counties only where the public would also be immune. *Robison v. Solano Cty.*, 278 F.3d
25   1007, 1016 (9th Cir. 2002) (citing Cal. Gov't Code § 815.2). Plaintiffs seek summary

---

[10] The evidence establishes the Ordinance was enacted on July 11, 2014 (ECF 189, at 12:20–21); that the summary abatement on Muskat's property occurred on July 17, 2014 (ECF No. 189, at 16:2–16); and that the summary abatements against all other plaintiffs occurred on August 1, 2014 (ECF No. 189, at 12:20–22).

13

judgment against Lake County on remaining claims five and six.  Because Plaintiffs' motion for partial summary judgment against Herdt and Kiethly fails, *see infra* Section III.8.c, summary judgment on the state claims against Lake County are likewise DENIED.

### 8. Liability of Defendants Herdt, Kiethly, Dutra, and Walsh

Plaintiffs allege Defendants Herdt, Kiethly, Dutra, and Walsh were officers with the Lake County Sheriff's Office, and that these four Defendants were present at several of the alleged summary abatements at issue in this case.  TAC ¶¶ 22–24, 26.  Defendants did not provide evidence to dispute these facts, and conceded during oral arguments that each of the alleged summary abatements on Plaintiffs' properties were conducted without a warrant.  Defendants did, however, provide evidence showing that the District Attorney of Lake County, Don Anderson, advised Herdt he could summarily abate marijuana without a warrant.  ECF No. 186-3, at 15: 6–15, 56:19–22.

#### a. Defendants Are Not Entitled to Qualified Immunity

These four Defendants argue they are entitled to qualified immunity.  Qualified immunity shields government officials from money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).  Courts may begin a qualified immunity analysis with either prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

##### i. Plaintiffs' Right Not to Be Subject to Warrantless Summary Abatements was Clearly Established

While establishing a clearly established right or law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, No. 16-67, 580 U.S. ----, 2017 WL 69170, at *4 (Jan. 9, 2017).  Moreover, "clearly established law" should not be defined at a high level of generality and must be "particularized" to the facts of the case.  *Id*. The plaintiff bears the burden of proving the existence of a "clearly established" law at the time of the alleged impermissible conduct.  *Maraziti v. First Interstate Bank of Cal.*, 953 F.2d 520, 523 (9th

Cir. 1992). If the plaintiff meets this burden, defendant then bears the burden of establishing that the actions were reasonable, even though they might have violated a plaintiff's constitutional rights. *Id.*

Defendants argue they are entitled to immunity on all claims because "there is no clearly established law that would place these officers on notice that where [Ordinance N] declares the growth [of marijuana] a public nuisance, that summary abatement without a warrant is not constitutional." Plaintiffs responded by alleging "there has been a persistent violation of the Fourth and Fourteenth Amendments, as well as their State Counterparts." ECF No. 196, at 17. Clearly, Plaintiffs have failed to meet their burden in establishing clearly established law given the "high level of generality" with which they define the Plaintiffs' right. Yet, while Plaintiffs failed to show the existence of a "clearly established law" at the time of the alleged summary abatements, Defendants own briefs have brought to the Court's attention *Conner v. City of Santa Ana*, 897 F.2d 1487 (9th Cir. 1990).

In *Conner*, the court was addressing whether city police officers had acted lawfully in entering the plaintiffs' property – without a warrant – to abate two vehicles that the city had determined to be a nuisance through administrative hearings. *Conner*, 897 F.2d at 1489–90. The lower court decided the warrantless seizure of the vehicles was lawful because it was preceded by numerous hearings and appeals. *Id.* at 1490. The Ninth Circuit disagreed citing *Michigan v. Tyler*, 436 U.S. 499, 504–05 (1978), where the Supreme Court held the Fourth Amendment protects individuals not only from warrantless searches by police, but also from government officials whose "purpose may be to *locate and abate* a suspected public nuisance, or simply to perform a routine periodic inspection." *Conner*, 897 F.2d at 1490. The Ninth Circuit rejected the city's argument that *Tyler* only imposed a warrant requirement for abatements of *suspected* nuisances. *Id.* In doing so, the court cited *Gleaves v. Waters*, 175 Cal. App. 3d 413 (1985) as rejecting, for purposes of the warrant requirement, any distinction between suspected and declared nuisances. *Id.* Indeed, in *Gleaves,* the court held that "in the absence of consent or exigent circumstances, government officials engaged in the abatement of a public nuisance must have a warrant to

15

1   enter any private property where such entry would invade a constitutionally protected
2   privacy interest." *Gleaves,* 175 Cal. App. 3d at 419.  The *Conner* court also recognized
3   that "the Supreme Court has held in other contexts that a warrant is required for entry even
4   after violation of a law is established." *Conner*, 897 F.2d at 1491.  Given the Ninth
5   Circuit's opinion in *Conner*, this Court finds the law was clearly established at the time of
6   the Defendants' actions that warrantless summary abatements were unlawful.

7   Defendants' other arguments bolstering their qualified immunity claim are equally
8   unavailing.  First, while Defendants point to a circuit split over whether warrantless
9   summary abatements are lawful, "the fact that there was a circuit split does not mean that
10  the law was not clear in this circuit prior to [a Supreme Court decision]." *Rivero v. City*
11  *and Cty. of San Francisco*, 316 F.3d 857, 865 (9th Cir. 2002); *see also Morgan v.*
12  *Morgensen*, 465 F.3d 1041, 1046 n. 2 ("The fact that there was a potential circuit split on
13  this issue does not preclude our holding that the law was clearly established for purposes
14  of the § 1983 inquiry.").  Stated differently, if the right is clearly established by Ninth
15  Circuit case law, the inquiry is settled.  *Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir.
16  2004). Second, although the county officers did seek the advice of the county's District
17  Attorney, who told Sergeant Herdt it was legally permissible to take marijuana without a
18  warrant, *see* ECF No. 186-3, at 15:6–14, "a lawyer's advice does not render an officer's
19  conduct per se reasonable." *Stevens v. Rose*, 298 F.3d 880, 884 (9th Cir. 2002) (internal
20  quotation marks omitted).

21  In sum, this Court finds the law was clearly established that officers could not
22  conduct warrantless summary abatements at the time of the alleged conduct.  Therefore,
23  qualified immunity does not apply and does not protect these Defendants from Plaintiffs'
24  claims.

25  **b. Defendants are Not Entitled to State Immunity**

26  Even if qualified immunity does not apply, Defendants argue they are protected
27  from liability under California law. As mentioned during oral arguments, Plaintiffs failed
28  to respond in their briefing to Defendants' claims for immunity under California statutes.

*See* ECF No. 209. Although Plaintiffs' counsel stated he "impliedly" responded to these arguments in addressing Plaintiffs' Bane Act claim, nothing in these arguments even comes close to explaining why state immunity statutes would not apply to Defendants. While the failure to respond to an argument may be viewed as grounds for waiver or concession of the argument, *see In re Online DVD Rental Antitrust Litigation*, No. M 09-2029 PJH, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011), "[g]iven that federal policy favors determination of cases on the merits," *In re Hulu Privacy Litigation*, No. C 11-03764 LB, 2012 WL 2119193, at *3 (N.D. Cal. June 11, 2012), the Court turns to address the merits of Defendants' state immunity arguments.

First, Defendants argue they are protected under Cal Gov't Code § 820.4. ECF No. 189, at 28:11–15. This section states in relevant part, "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." Cal. Gov't Code § 820.4. But, as established above, because the law was clearly established that Defendants could not conduct warrantless summary abatements, they could not have been exercising due care when enforcing Ordinance N. Consequently, this statute is of no help to Defendants.

Second, Defendants make the same claim for immunity under Cal. Gov't Code § 821.4. ECF No. 189, at 29:3–12. This section states: "A public employee is not liable for injury caused by his failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property . . . for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." Yet, here, Plaintiffs' claims did not arise from the failure to inspect nor did they arise from an inadequate or negligent inspection – they arose from a warrantless search. Defendants own cited authority confirms a finding that § 821.4 does not apply here:

> In order for the immunity [under § 821.4] to apply, the negligence in question must have been part and parcel of the inspection or have had a direct or proximate effect on it, either by impairing its value, frustrating its goals or purposes, affecting the results or findings made, or in some other

17

> way resulting in damage to the investigation itself. *Conversely, the immunity does not protect public entities from liability for negligent acts or omissions that happen to occur while the inspection is taking place, but which do not affect the results or goals of the inspection itself.*

*Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405, 412 (1984) (emphasis added). Section 821.4 does not shield Defendants.

Third, Defendants attempt another claim for immunity under Cal. Gov't Code 821.6, which states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." This claim also lacks merit and Defendants' cited authority undermines their claim. In *Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 462–63 (2002) the court held § 821.6 applied to a hearing officer's actions in instituting and prosecuting nuisance proceedings. The same court also held § 821.6 did not apply where "the tort complained of occurred *after* the judicial or administrative proceeding has been completed," and refused to bar liability against a county official who relied on an abatement warrant to remove defendants from their home and then ordered bulldozers to demolish defendants' home without giving them a chance to retrieve their personal belongings. *Id.* In Defendants' second cited case, *Alvarez v. Lake County Board of Supervisors*, No. CV 10-1071 NJV, 2010 WL 3619558, at *19 (N.D. Cal. Sept. 13 2010), the court applied section 821.6 to immunize county officials from "liability arising from instituting and prosecuting the nuisance proceedings against [p]laintiffs." *Id.* (citing *Ogborn*, 101 Cal. App. 4th at 464). In contrast to *Ogborn* and *Alvarez*, here, the county officers were not instituting or prosecuting a judicial or administrative proceeding. In fact, by statutory definition a summary abatement occurs without the administrative protections of notice and the opportunity for a hearing. *See* Cal. Gov't Code § 25845(a).

Lastly, Defendants claim all trespassing claims are barred by Cal. Gov't Code § 821.8, which provides public employees are "not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law.

Nothing in this section exonerates a public employee from liability for an injury proximately caused by his own negligent or wrongful act or omission." However, here, as stated above, Defendants were on notice that warrantless summary abatements were wrongful. Hence, § 821.8 does grant the Defendants immunity. Accordingly, Defendants' motion for summary judgment as to Defendants Herdt, Kiethly, Dutra, and Walsh are DENIED on claims one, five, six, nine, and ten.

### c. Plaintiffs' Motion for Summary Judgment as to Defendants Herdt and Kiethly is Denied

Lastly, Plaintiffs Harris and Oathout seek summary judgment against Officers Herdt and Kiethly on remaining claims one, five, and six. The Court finds, however, that Plaintiffs Harris and Oathout have not met their burden of proof. Indeed, Plaintiffs Harris and Oathout provided absolutely no testimony or evidence about what Defendants Herdt or Kiethly did at their properties. Accordingly, Plaintiffs' motion for partial summary judgment as to claims one, five, and six against Herdt and Kiethly is DENIED.

**CONCLUSION**

For the reasons articulated above, the Court GRANTS Defendants' motions for summary judgment on claims two, three, four, seven, and eight, and as to all claims against Coel, Rivero, Macedo, and Lockett; and DENIES summary judgment on all other claims.

**IT IS SO ORDERED.**

Dated: 1/25/17   _____
THELTON E. HENDERSON
United States District Judge